[Crim. No. 14545. First Dist., Div. One. July 15, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
FREDDIE LOUIS BENNETT, Defendant and Appellant.

**COUNSEL**

James E. Stevens, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, William D. Stein and Morris Lenk, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ELKINGTON, J.**—By a jury's verdicts defendant Bennett was convicted of first degree murder, and found to have been armed with a deadly

weapon and to have used a firearm in the commission of the offense. He appeals from the judgment which was thereafter entered on the verdicts. Four contentions of error are made.

Bennett made no denial of the commission of the act of homicide; his defense was self-defense and "diminished capacity" which he describes as "his state of mind at the time." The jury's verdicts were beyond any doubt supported by substantial evidence according to the standards of *People* v. *Redmond,* 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321], and *Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.,* 66 Cal.2d 782, 784-785 [59 Cal.Rptr. 141, 427 P.2d 805].

For the reasons which we now state, it is concluded that the judgment, subject to a certain modification, must be affirmed.

I. It is first contended by Bennett that the "testimony of . . ., the prosecution's psychiatrist, was admitted into evidence in violation of appellant's *Miranda* rights [and] in violation of appellant's physician-patient privilege, *Evidence Code section* 994."

The *Miranda* contention is raised for the first time on appeal, and is accordingly found to be invalid. "There is abundant authority in this state that if there is no objection at the trial to the admission of a confession or of statements obtained in violation of *Miranda,* the objection cannot be raised for the first time on appeal." (*People* v. *Peters,* 23 Cal.App.3d 522, 530 [101 Cal.Rptr. 403] [cert. den., 409 U.S. 1064 (34 L.Ed.2d 517, 93 S.Ct. 563)], and see authority there collected.)

 Further, the record establishes that at least twice before he was interviewed by the psychiatrist, *Miranda* admonitions were read to Bennett. "[O]ne warning of the *Miranda* rights adequately given is sufficient for subsequent interrogations." (*People* v. *Brockman,* 2 Cal.App.3d 1002, 1006 [83 Cal.Rptr. 70], and see authority there collected; see also *People* v. *Johnson,* 32 Cal.App.3d 988, 997 [109 Cal.Rptr. 118].) And we note that the silent record fails to establish that no *Miranda* warning was given by the doctor; had timely objection been made an inquiry may have disclosed yet another such admonition. An accused may not by withholding an objection prevent correction of a trial omission and thus assure himself of a reversal, if convicted. Such speculation on a favorable verdict followed by a tardy claim of error is not permitted. (*People* v. *Tappan,* 266 Cal.App.2d 812,

817 [72 Cal.Rptr. 585]; *People* v. *Doerr,* 266 Cal.App.2d 36, 40 [71 Cal.Rptr. 889].)

We have considered the application to this issue of the recent case of *People* v. *Bennett* (not the defendant in the present case), 58 Cal.App.3d 230 [129 Cal.Rptr. 679], which involved a similar claim of lack of *Miranda* admonition by a prosecution psychiatrist. There, unlike the case at bench, proper and timely objection had been made by the defendant. The case is of no aid to us on the instant appeal. (See *People* v. *Peters, supra,* 23 Cal.App.3d 522, 530.)

■ An incidental contention is that allowance of the psychiatrist's testimony "as to appellant's extensive drug history" was prejudicially erroneous. It is based upon the following proceedings: "Q. [By deputy district attorney, Mr. Van Sicklen]: Did you ask him about specific narcotics or drugs of any kind? A. Yes, I did. Q. Did he answer positively to any of those questions? A. Yes, he did. He has a rather extensive drug history here. (Examining records.) Q. Did he indicate whether or not he had drugs—MR. DIAMOND [defense attorney]: I'll object to that, Your Honor. MR. VAN SICKLEN: Q.—the night in question? THE COURT: Excuse me just a minute. The prior answer, you mean? MR. DIAMOND: Yes, Your Honor, ask it be stricken. THE COURT: The answer will be stricken; the jury will disregard it. You may question him as to what the defendant said regarding the period immediately before the incident in question. MR. DIAMOND: I would approach the bench, Your Honor. THE COURT: All right. (Off-record conference at bench.) THE COURT: Just one minute. I want to make clear to the jury we're not dealing here at all with any prior history that anybody might have had; the only relevant information here relates to what occurred immediately before the incident in question and what influence it might have had one way or the other in connection with that incident; that's all we're concerned with."

We opine first that Bennett's extensive drug history may not reasonably be deemed wholly irrelevant to his diminished capacity defense. Even if it be considered irrelevant, and therefore inadmissible, substantial prejudice is not apparent for, without objection, the psychiatrist otherwise testified to Bennett's admitted *current* or *recent* drug usage; indeed proof of that drug usage was a part of Bennett's defense. And in any event, such prejudice as might have existed appears to have been cured by the trial court's prompt jury admonition.

■ Nor is a violation of the physician-patient privilege of Evidence Code section 994 to be found in the psychiatrist's testimony. Evidence Code section 998 expressly provides that the privilege does not apply in a criminal proceeding.

II. ■ The People's theory at the trial was that the charged homicide was first degree murder since it was committed in the perpetration of or attempt to perpetrate robbery, *and* was a "willful, deliberate, and premeditated killing, . . ." (See Pen. Code, § 189.) Bennett urges that the jury were permitted to, and probably did, disagree on which was the theory upon which they based their first degree murder verdict. This, he claims, was error.

A similar contention was made in *People* v. *Milan,* 9 Cal.3d 185, 195 [107 Cal.Rptr. 68, 507 P.2d 956], where the court said: "[I]n a prosecution for first degree murder it is not necessary that all jurors agree on one or more of several theories proposed by the prosecution; it is sufficient that each juror is convinced beyond a reasonable doubt that the defendant is guilty of first degree murder as that offense is defined by the statute." (See also *People* v. *Nye,* 63 Cal.2d 166, 173 [45 Cal.Rptr. 328, 403 P.2d 736] [cert. den., 384 U.S. 1026 (16 L.Ed.2d 1033, 86 S.Ct. 1960)]; *People* v. *Hardenbrook,* 48 Cal.2d 345, 353-354 [309 P.2d 424]; *People* v. *Chavez,* 37 Cal.2d 656, 670-672 [234 P.2d 632]; *People* v. *Seastone,* 3 Cal.App.3d 60, 69 [82 Cal.Rptr. 907].)

III. ■ Error is charged in the admission at the trial of "evidence obtained by the police during a warrantless search of the appellant's home and without probable cause . . . ."

The subject homicide occurred May 31, 1974, and the police promptly obtained a warrant for Bennett's arrest therefor. A fruitless attempt was made to execute the warrant on June 1 at a residence where Bennett lived alone; the premises were found unoccupied. Several days later someone identifying himself as Bennett telephoned the police, but while they were trying to trace the call the person went off the line. Suspecting that Bennett may have returned to his home the police went there. It was observed that a window shade had been moved, and that an open back door had been closed since the last police visit to the premises. While in the backyard one of the officers heard "kind of a shuffling noise . . . like

something being moved or dragged across the floor," which seemed to come from "within the dwelling." The officers knocked on the door and announced their presence and identity. Since no one answered within a reasonable time, with the assistance of a neighbor and friend of Bennett, the police entered. Within the dwelling and while searching for Bennett in a bedroom, an officer observed a .22-caliber rifle, which was "consistent" with the weapon used in the homicide. The officer "grabbed the rifle" and when he did, a jacket upon which it was resting started to fall to the floor. The jacket was "extremely heavy" and an examination of it disclosed 99 bullets of .22 caliber. The gun, the jacket and the bullets were seized by the police and later became the evidence which is the subject of the instant assignment of error.

From the foregoing facts the superior court reasonably concluded that the police had good cause to believe that Bennett, for whom they held an arrest warrant, was present in the premises. They accordingly were permitted, upon compliance with the "knock and notice" requirements of Penal Code section 844, to enter the building. (*Horack* v. *Superior Court,* 3 Cal.3d 720, 726 [91 Cal.Rptr. 569, 478 P.2d 1].) The record establishes substantial compliance with section 844. Upon entering the premises they were, of course, authorized to institute a search for Bennett. During the course of such a search they observed the gun in plain sight. This they were obviously allowed to seize and later use as evidence. (*People* v. *Block,* 6 Cal.3d 239, 243 [103 Cal.Rptr. 281, 499 P.2d 961].) We further opine that under the described facts and circumstances, examination of the heavy jacket and seizure of the bullets found therein were reasonable. (See *People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577] [cert. den., 364 U.S. 841 (5 L.Ed.2d 65, 81 S.Ct. 79)].) Assuming arguendo the contrary, the allowance of the bullets in evidence was obviously harmless; for since the gun was properly in evidence, the bullets had little, if any, additional prejudicial effect. (See Cal. Const., art. VI, § 13; *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243] [cert. den., 355 U.S. 846 (2 L.Ed.2d 55, 78 S.Ct. 70)].)

It follows that the superior court did not err, at least prejudicially, in allowing the questioned items of property in evidence.

IV. ▮ The jury found, as indicated earlier, that in the commission of the homicide Bennett (1) "was armed with a deadly weapon" (see Pen.

Code, § 12022)[1] and (2) "did use a firearm" (see Pen. Code, § 12022.5).[2] The judgment iterated both of those findings, as did its abstract under which Bennett has been committed to state prison. Accordingly, on the Penal Code section 12022 finding, "in addition to the punishment prescribed for the crime of which he has been convicted," Bennett is punishable consecutively "for not less than five nor more than 10 years." At the same time, by virtue of the section 12022.5 finding, "in addition to the punishment prescribed for the crime of which he has been convicted," he shall "be punished by [consecutive] imprisonment in the state prison for a period of not less than five years."

Bennett "requests that this court determine that the punishment for the arming clause should merge with the punishment for the use clause and the judgment be amended accordingly to eliminate any possibility of enhanced punishment for both being armed and using the firearm."

The question presented is whether or not the Legislature intended that the increased punishment of its later enactment, section 12022.5, should be in addition to that of section 12022 in cases where it is alleged and found that the accused was "armed with a deadly weapon" and "used a firearm," while committing a single offense.

■ Of prime consideration is the well-known rule that: "When language which is reasonably susceptible of two constructions is used in a penal law ordinarily that construction which is more favorable to the offender will be adopted." (*People* v. *Ralph,* 24 Cal.2d 575, 581 [150 P.2d 401].) The rule is of universal application. The United States Supreme Court has said: "It may fairly be said to be a presupposition of our law to

---

[1]Penal Code section 12022: "Any person who commits or attempts to commit any felony within this state while armed with any of the deadly weapons, as defined by subdivision (f) of Section 3024, upon conviction of such felony or of an attempt to commit such felony, shall in addition to the punishment prescribed for the crime of which he has been convicted, be punishable by imprisonment in a state prison for not less than five nor more than 10 years. Such additional period of imprisonment shall commence upon the expiration or other termination of the sentence imposed for the crime of which he is convicted and shall not run concurrently with such sentence. . . ."

[2]Penal Code section 12022.5 as here relevant: "Any person who uses a firearm in the commission or attempted commission of a robbery, assault with a deadly weapon, murder, rape, burglary, or kidnapping, upon conviction of such crime, shall, in addition to the punishment prescribed for the crime of which he has been convicted, be punished by imprisonment in the state prison for a period of not less than five years. Such additional period of imprisonment shall commence upon expiration or other termination of the sentence imposed for the crime of which he is convicted and shall not run concurrently with such sentence. . . . [¶] This section shall apply even in those cases where the use of a weapon is an element of the offense."

resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment." (*Bell* v. *United States,* 349 U.S. 81, 83 [99 L.Ed. 905, 910, 75 S.Ct. 620].) To the same effect see *Keeler* v. *Superior Court,* 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420]; *People* v. *Baker,* 69 Cal.2d 44, 46 [69 Cal.Rptr. 595, 442 P.2d 675]; *In re Murdock,* 68 Cal.2d 313, 317 [66 Cal.Rptr. 380, 437 P.2d 764]; *People* v. *Alotis,* 60 Cal.2d 698, 708 [36 Cal.Rptr. 443, 388 P.2d 675].

 Section 12022.5 (enacted 1969) appears to be a legislative response to holdings of certain cases (i.e., *People* v. *Floyd,* 71 Cal.2d 879 [80 Cal.Rptr. 22, 457 P.2d 862]) that the increased punishment because of being armed with a deadly weapon, of statutes such as Penal Code sections 12022 and 3024,[3] was inapplicable where an element of the crime charged was being so armed. (See *People* v. *Chambers,* 7 Cal.3d 666, 672 [102 Cal.Rptr. 776, 498 P.2d 1024].) The obvious purpose of the later enactment (see fn. 2, *ante*) was to insure that those who commit certain offenses while armed with a deadly weapon, but are not subject to the increased punishment of section 12022, will nevertheless suffer an additional penalty, if the deadly weapon is a *firearm,* and is *used.* No further purpose is seen, where section 12022 is not rendered inapplicable by *People* v. *Floyd, supra,* and its related cases, to impose increased punishment for the use of a firearm and *also* for its necessary concomitant, being armed with it.

From a consideration of the history of the two Penal Code sections here at issue, the court in *People* v. *Graham,* 38 Cal.App.3d 251, 255 [112 Cal.Rptr. 915], concluded that "section 12022.5 is intended to cover situations to which the older enactment [§ 12022] cannot apply." This authority also gives solid support to Bennett's instant contention.

From the foregoing we are impelled to hold, and we do hold, that one convicted of a crime may not suffer the enhanced penalties of both Penal Code sections 12022 *and* 12022.5.

We recognize that it would frequently be proper in a case such as that before us to allege as required by both statutes and to require jury or court findings thereon, for whether one or the other is apposite is often a

---

[3]Penal Code section 3024: "The following shall be the minimum term of sentence and imprisonment in certain cases, notwithstanding any other provisions of this code, or any provision of law specifying a lesser sentence: (a) For a person not previously convicted of a felony, but armed with a deadly weapon either at the time of his commission of the offense, or a concealed deadly weapon at the time of his arrest, two years; . . ."

question of fact. Where the jury or court shall find, as to a single charged offense, that the accused was armed with a deadly weapon (§ 12022) *and* did use a firearm (§ 12022.5), the trial court should strike or otherwise eliminate the effect of the section 12022 finding. But if, and when, the accused is nevertheless committed to state prison on findings that, in relation to a single offense, he was armed with a deadly weapon *and* that he used a firearm in its commission, the Adult Authority, as a matter of law, shall disregard the section 12022 "armed with a deadly weapon" finding.

We are advised by the Attorney General of the possibility that if Bennett, or a similarly situated offender, "were later to commit a felony while armed with any of the deadly weapons defined in subdivision (f) of section 3024 of the Penal Code other than a firearm, or if he committed a felony not enumerated in section 12022.5, the penalty enhancing provision of section 12022.5 would not apply. . . . And, because the finding under section 12022 had been stricken, he could then not be additionally punished as a multiple offender under that section." For this reason we are asked to "stay the effect of the section 12022 finding, rather than striking it entirely, . . ." We think the People's fears are unfounded. One who uses a firearm (§ 12022.5) is necessarily armed with a deadly weapon (§ 12022). (See *People* v. *Strickland,* 11 Cal.3d 946, 961 [114 Cal.Rptr. 632, 523 P.2d 672].) If in the future Bennett shall commit an offense subject to the provisions of section 12022, the jury's finding in the instant case that he used a firearm may also be treated as a finding that he was armed with a deadly weapon.

The superior court will modify the judgment, and the abstract of judgment and commitment to state prison, by striking therefrom the jury's finding that defendant was armed with a deadly weapon in the commission of the offense of which he was convicted. As so modified, the judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.

A petition for a rehearing was denied August 11, 1976, and the opinion was modified to read as printed above. Sims, J., was of the opinion that the petition should be granted.