[Crim. No. 35902. Second Dist., Div. Five. Oct. 31, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
HAROLD LAWRENCE, Defendant and Appellant.

632

**COUNSEL**

Jay L. Lichtman, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Robert F. Katz and Gary R. Hahn, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**STEPHENS, Acting P. J.**—Defendant was charged with a six-count criminal information. In count I he was charged with robbery (Pen. Code, § 211) of Darryl Thompson. In count II, he was charged with grand theft of an automobile (Pen. Code, § 487) belonging to Mrs. Ollie Hieatt. In count III, he was charged with the unlawful taking of an automobile (Veh. Code, § 10851) also belonging to Mrs. Hieatt. In count IV, he was charged with receiving stolen property (Pen. Code, § 496)—a ring belonging to Dr. Benjamin Cowan. In count V, he was

charged with burglary (Pen. Code, § 459) of Dr. Benjamin Cowan's home. In count VI, he was charged with burglary (Pen. Code, § 459) of Mrs. Ollie Hieatt's home.

Defendant entered pleas of not guilty. Trial was by jury. Defendant was found guilty of grand theft as charged in count II, guilty of receipt of stolen property as charged in count IV and guilty of burglary as charged in counts V and VI. The burglaries of both Dr. Cowan and Mrs. Hieatt were found to be in the second degree. The jury declared itself deadlocked as to count I, and a mistrial was declared. Count III was dismissed by stipulation because of the finding on count II. Probation was denied and defendant was committed to the California Youth Authority. The trial court found that if sentenced to state prison, defendant would have been sentenced to the middle term of two years on count V with consecutive midterm two-year sentences imposed on counts II and VI. Sentence on count IV would have been for the middle term of two years with execution of sentence stayed pending completion of sentence on count V at which time the stay would become final. Defendant has appealed from the judgment of conviction.

I.

*The Factual Background*

The evidence at trial established the following: In November 1978, Mrs. Hieatt left her home on East Brett Street in Inglewood to make an extended visit to Fresno, California. When she left, she gave Dr. Benjamin Cowan the keys to her car and left her car parked in his back driveway. She also gave her house keys to Mary Suffern, a neighbor who lived nearby, to take care of her house. On November 21, Dr. Cowan and his wife returned to their home between 7:30 and 8 p.m. and discovered that their home had been burglarized at sometime between 7:30 or 8 p.m., their time of leaving and their return. Dr. Cowan found that several personal items were missing, including a high school class ring with his initials, BFC, engraved on it and a set of headphones with a broken antenna. He also found that the keys to Mrs. Hieatt's car were missing from the kitchen cabinet drawer and the car from the driveway. Dr. Cowan immediately reported this burglary and the theft of Mrs. Hieatt's automobile, a white Oldsmobile Omega, 1977, license number 436 TMI.

Mrs. Hieatt's home was next door to Dr. Cowan's home and located at 804 East Brett Street, Inglewood. A burglary of her home took place sometime between 11 a.m. of November 21 and 11 a.m. on November 22, the hours at which Mrs. Suffern came to check the mail and water the plants. When Mrs. Hieatt returned, she noted many personal items had been taken, including a leather scabbard of unique character.

At about 1:15 a.m. of November 22, Deputy Sheriffs Senkow and Taggart of the Los Angeles County Sheriff's Department noticed a white Oldsmobile, bearing license number 436 TMI, riding with wobbly wheels on Prairie Avenue near Lennox Boulevard, approximately three miles from the burgled residences.[1] The deputies believed that the tires were going to fall off. There was also damage to the left side of the car as if it had been in an accident. Thus, they felt the car was in an unsafe condition and were going to stop the car for that reason. Before doing so they ran a registration check while they followed the white Omega from a distance. The check indicated that the car was stolen. The deputies then made a felony stop: they ordered the two occupants out of the car at gun point, handcuffed, searched and arrested them. The car was also searched. All the items recovered—radio, earphones, the scabbard, etc., were taken from atop the backseat or the rear floorboard. The driver was identified as defendant, Harold Lawrence.[2] The other passenger, a juvenile, was not charged as a codefendant. Dr. Cowan's class ring was taken by the deputies from defendant's hand.

Defendant was taken to the Inglewood police station and booked. He was released on bail and according to defendant's testimony, Dr.

---

[1]We take judicial notice of the distance between the 904 block on East Brett Street and the spot where defendant was first seen by the deputy sheriffs. (Evid. Code, §§ 452, 459; *Varcoe v. Lee* (1919) 180 Cal. 338, 343 [181 P. 223]; *People v. Hallman* (1973) 35 Cal.App.3d 638, 641, fn. 1 [110 Cal.Rptr. 891].) If defendant disputes the tenor of the facts which we judicially notice, he is invited to furnish the court with appropriate information in a petition for rehearing. As this court held in *Hallman*, "This procedure is deemed sufficient compliance with the requirement of section 459, subdivision (c) of the Evidence Code." (*Id.* at p. 641, fn. 1.)

[2]The state presented evidence that at this point, two men, Darryl Thompson and Jeffrey Richardson, approached the scene and Mr. Thompson claimed he had been robbed of some cash at a nearby gas station by the occupants. The deputies noticed contusions and lacerations on the face of both Thompson and Richardson. Mr. Thompson was legally unavailable at the time of trial to testify. Mr. Richardson testified that he could not identify his attacker since he was struck from behind. The jury deadlocked on a charge of robbery of Mr. Thompson. Evidently, the jury concluded that the identity of the robber was not sufficiently established as defendant.

Cowan's class ring was returned by the booking officer to defendant Lawrence.[3] Certain other items seized were not returned. A week later defendant returned to the station to recover one or more of these items. Before defendant made a specific request, Officer Moret asked defendant about the ring on his finger and asked to examine it. Defendant complied. The ring was not returned and was produced as evidence at trial where Dr. Cowan identified it as his ring.

The sole defense at trial was the testimony of defendant Harold Lawrence. Mr. Lawrence testified that on November 21, 1978, the date of the alleged crimes, he worked at the Architectural Glass Works in Gardena at 134th Street and Normandie from 7 a.m. to 7 p.m., but left work at 7:35 or 7:40 p.m. Defendant was at work all day except when he went to lunch at 1 to 1:20 p.m. with his foreman and coworker, Mike. Defendant's workplace is approximately seven and three-quarter miles from the scene of the burglaries.[4] After defendant left work, he cashed some checks at the corner liquor store. Around 7:50 p.m. defendant boarded a public bus going east on El Segundo to go to his sister's apartment near Prairie Avenue in Hawthorne (Los Angeles). He was in her exclusive company until 9:50 p.m. when defendant's friend, Michael Loring, arrived. Michael has since moved to Idaho. Defendant left his sister's residence around 11:15, taking a bus to Prairie and Century—northward into Inglewood.[5] Defendant then ate at Bob's Big Boy on Century and Hawthorne Boulevard until 1 a.m., at which point he began waiting for a bus home to 59th Street and Western. A white Oldsmobile (Mrs. Hieatt's recently stolen car) was approaching when defendant recognized the front-seat passenger, David Ward, defendant's friend. Defendant waived and the car stopped a short distance beyond the stop. Defendant entered the back seat and claims he did not see any of the objects or property later seized by the police. Defendant further testified that "when I got in the car in the first place" David handed defendant Dr. Cowan's ring and said to defendant "This must be his [the driver's] ring." Defendant's testimony was, however, inconsistent on this

---

[3]The state introduced no evidence on how defendant *received* the ring other than through the burglary. The state admits as much in its brief by failing to point to any evidence that it produced on the alleged receiving, asserting only that "[a]ppellant testified himself" on how he received back the ring.

[4]We take judicial notice of the distance between 805 block on East Brett Street and the intersection of 134th Street and Normandie. We do so on the same basis as stated in footnote 1, *ante.*

[5]We take judicial notice that Prairie and Century is to the north of Prairie and El Segundo and is in Inglewood. We do so on the same basis as stated in footnote 1, *ante.*

point.[6] Defendant repeatedly asserted that at all times—even up to his arrest—he held the ring in his hand (apparently even while driving) and never put it on his finger.[7]

The defendant further testified that the driver, introduced as "Eddie," stopped at a gas station and had a fight outside the car with two other persons. (See fn. 2.) Defendant stayed in the automobile with the engine running. When Eddie was chased across the street, defendant jumped into the driver's seat and drove away. Defendant drove the vehicle about two and one-half blocks—about four minutes—before the deputies stopped the car. Defendant denied participating in any burglary and did not know the ring had been stolen.

## II.

### Contentions on Appeal

Defendant advances the following contentions on appeal: (1) that the evidence is insufficient to support the verdict; (2) that the trial court erroneously failed to instruct the jury that it cannot simultaneously convict defendant of stealing and receiving the same stolen property; (3) that the trial court erred in not directing an acquittal on its own motion at the close of state's evidence; and (4) that he was denied the effective assistance of trial counsel.

## III.

### The Issue of the Sufficiency of Evidence

Defendant contends that the evidence was insufficient to sustain the conviction on these burglaries and grand theft. The testimony of Dr. Cowan, Mrs. Suffern and the deputy sheriffs established that two burglaries and a grand theft of an automobile had been committed,

---

[6]Defendant Lawrence was asked at another point where and when he obtained the ring. Defendant replied, "He [a person in the car] handed it to me *because he had ran.*" (Italics added.) This was a reference to defendant's story that at a later point the driver, Eddie, pulled over, had a fight and ran away. Thus, defendant's testimony appears to say he was given the ring immediately upon entering the automobile and again later when Eddie ran away. Defendant did not testify he gave the ring back to anyone and thus his statements are irreconcilable.

[7]Defendant testified, "I was holding onto it, and I was arrested;..." When specifically asked, "Were you still holding it when the police came?" he responded, "Yes....Yeah, they took it out of my hand."

that defendant was found with the fruits of each crime, that he was arrested within close proximity to the burgled residences (three miles) and near in time (no more than fourteen hours and as close as six hours), that defendant had opportunity (his work-place was only about eight miles away), and that defendant had no explanation at the time of his arrest. Defendant's own testimony further indicated his consciousness of guilt by his unusual story as a witness.

■ In a prosecution for burglary or grand theft the evidence on which a defendant is convicted may be purely circumstantial and, if substantial, as in the present case, is sufficient to support the judgment of guilty. (*People* v. *Banks* (1976) 62 Cal.App.3d 38, 42 [132 Cal.Rptr. 751] [burglary]; *People* v. *Hallman* (1973) 35 Cal.App.3d 638, 641 [110 Cal.Rptr. 891] [grand theft].) The instant case falls within the rule that possession of recently stolen property is so incriminating that to warrant conviction there need only be slight corroboration in the form of statements or conduct of the defendant tending to show his guilt. The jury may consider an intentional fabrication by defendant as an admission of guilt and this alone can be adequate corroboration of guilt. (*People* v. *Wayne* (1953) 41 Cal.2d 814, 823 [264 P.2d 547].)
■ The court in *Wayne* concluded, "Here defendant did not simply deny his guilt; he ventured upon an explanation so unusual that the triers of fact could conclude that it was an intentional fabrication indicating consciousness of guilt and the absence of any true exculpatory explanation." (*Id.* at p. 823.) We believe that defendant's testimony in the case at bar was of the kind described in the quoted portion of *Wayne*. (See *People* v. *Amador* (1970) 8 Cal.App.3d 788, 792 [87 Cal. Rptr. 662].) We conclude, therefore, that substantial evidence supports the conviction.

## IV.

### *The Issue of Simultaneous Convictions for Receipt and Burglary*

■ Defendant next contends that his conviction for receipt of stolen property should be reversed because ordinarily a defendant cannot be convicted of stealing and receiving the same stolen property. The trial court failed to instruct the jury on this point of law. The People contend that the conviction can be affirmed as a concealing or withholding of stolen property and does not fall within the prohibition on simultaneous convictions.

It is manifest that the conviction of concealing, withholding or receiving the class ring must be reversed. In what appears to have been an attempt to avoid the proscription against double punishment, defendant was sentenced on the burglary (of Dr. Cowan's home) conviction as the greater offense than the receipt (of Dr. Cowan's ring), with the sentence on the receipt conviction temporarily stayed, the stay to become permanent upon the successful completion of the terms of the sentence for the burglary conviction.[8] This treatment overlooks, however, that with recognized exceptions not here applicable, an individual may not be *convicted* of a theft (as after an unlawful entry) and of receiving or *withholding* or *concealing* the same stolen property. (*People v. Jaramillo* (1976) 16 Cal.3d 752, 757-759 [129 Cal.Rptr. 306, 548 P.2d 706]; *People v. Jackson* (1978) 78 Cal.App.3d 533, 538 [144 Cal.Rptr. 199].) Failure of the trial court to so instruct in such a circumstance mandates reversal of the receipt conviction. (*People v. Perez* (1974) 40 Cal.App.3d 795, 800 [115 Cal.Rptr. 405].) The burglary conviction is subject to reversal unless the jury would "most probably" have returned a conviction for burglary if properly instructed. (*Perez, supra,* at p. 801.) In this case, the evidence on the burglaries is clear and convincing and the jury would have returned a guilty verdict on these charges even if properly instructed. (Cf. *State v. Fioravanti* (1965) 46 N.J. 109 [215 A.2d 16, 25-26] cert. den. 384 U.S. 919 [16 L.Ed.2d 440, 86 S.Ct. 1365])

The People contend that the twin-conviction may stand because there had been a complete divorcement between the theft and subsequent receiving, concealing or withholding when the police station booking officer took possession and then returned the ring to defendant upon his release on bail.

The People rely on *People v. Jaramillo, supra,* 16 Cal.3d 752, wherein it is stated (at p. 759, fn. 8): "[W]hen there is evidence of complete divorcement between the theft and a subsequent receiving, such as when the thief has disposed of the property and subsequently receives it back in a *transaction separate* from the original theft, conviction on both charges would be proper." (Italics added.) We conclude, however, that

---

[8]Penal Code section 654 provides as follows: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omissions under any other."

Although amended in 1977 (Stats. 1977, ch. 165, § 11, p. 644), the change in language by the amendment is not significant to this appeal.

the separate transaction must be voluntary for purposes of determining that the receipt is *intended* as an independent act divorced from the theft. Thus, if a subsequent "receiving" in a separate transaction is not voluntary, then the theft has not been divorced from the "receiving." It follows also that any "concealing" or "withholding" of stolen property remains part of a continuous course of conduct of the theft in such a circumstance.

The rule against twin-convictions announced in *Jaramillo, supra*, is based upon Penal Code section 654.[9] The purpose of the statute is to prevent double punishment for a single course of conduct. "'Whether a *course of criminal conduct* is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective of the actor*. If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not more than one.'" (*People* v. *Beamon* (1973) 8 Cal.3d 625, 637 [105 Cal.Rptr. 681, 504 P.2d 905], quoting *Neal* v. *State of California* (1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839]. Italics in original.) In *Beamon* a course of criminal conduct resulted in a kidnaping and robbery. Since the defendant entertained only an intent to rob, and the kidnaping was merely incidental to that objective, his course of conduct was not deemed divisible and he could not be punished for kidnaping as well as robbery.

In the instant case there was not a separate transaction when the booking officer returned the ring to defendant. The holding of the personal property following a booking is in the nature of a holding in trust; it does not transfer indicias of exclusivity of possession. When the ring was returned to defendant, it was not a suspect item where possessor rights in defendant were questioned. In sum, no separate transaction had occured. (See *People* v. *Beamon, supra*, 8 Cal.3d 625, 639.)

The receipt conviction unlawfully imposed a double conviction for the same course of conduct, and, as the lesser offense, is reversed.

## V.

*The Issue of the Trial Court's Error to Grant Acquittal at the Close of State's Evidence*

Appellant contends that the trial court erred in failing to make a *sua sponte* judgment of acquittal at the close of state's evidence. No motion

[9]See footnote 8, *ante*.

for acquittal was made at that point. Having heretofore discussed the sufficiency of the evidence issue and found against defendant's contention, this argument likewise fails. We note, however, that even had the contention had some merit, it could not be raised for the first time on appeal.

## VI.

### *The Issue of Effective Assistance of Trial Counsel*

Defendant advances the contention that he was denied effective assistance of trial counsel because his trial counsel (1) failed to make a motion of acquittal at the close of state's evidence; (2) established the People's case by putting on defendant as a witness and allowing defendant to tell an obvious intentional fabrication which corroborated defendant's guilt; (3) failed to call witnesses to corroborate defendant's alibi; and (4) withdrew a motion to suppress the evidence obtained by the deputies from the car defendant was driving.

At trial defendant's appointed counsel did not make a motion to acquit when the prosecution rested. Trial counsel is not inadequate because he failed to present a futile motion or objection. (See *People v. Adams* (1980) 101 Cal.App.3d 791, 800 [162 Cal.Rptr. 72] [objection].) We have already stated that the circumstantial evidence presented by the People was clearly sufficient on the burglary and grand theft counts.[10] In light of the People's evidence on these charges, defendant's counsel pursued a reasonable choice of tactics, as he may, and put defendant on the stand. (Cf. *In re Richard W.* (1979) 91 Cal. App.3d 960, 974 [155 Cal.Rptr. 11] [damaging cross-examination of People's witness was a tactical choice].) Defendant's trial counsel failed to obtain witnesses to corroborate defendant's alibi testimony. Assuming a reasonably competent trial counsel would have sought witnesses to corroborate defendant's story in the instant case, counsel's omission to do so here did not result in the withdrawal of a potentially meritorious defense. Defendant's alibi witnesses, if believed and consistent, could only have accounted for defendant's whereabouts from 1 to 1:20 p.m. and from 9:50 to 11:15 p.m. on November 21, 1978. The People established that the crimes took place between 11 a.m. and 7:30 or 8 p.m. on

---

[10]We need not decide whether trial counsel should have made a motion of acquittal pursuant to Penal Code section 1118.1 on the receipt count because we have reversed that conviction on other grounds.

the same date. Therefore, defendant still had ample opportunity to commit the crimes of which he was accused. Although counsel's omission in effect withdrew a corroborated alibi, counsel's omission did not result in a withdrawal of a potentially meritorious defense.

■ Defendant's counsel orally noticed a motion to suppress the property seized from the automobile at the preliminary hearing. The judge at the hearing did not rule on it. Counsel withdrew the motion at trial. Evidence that was taken from the car and later introduced at trial consisted of Mrs. Hieatt's leather scabbard and Dr. Cowan's set of headphones. The deputies took stolen property from atop the backseat and on the rear floorboards. It would have been futile for trial counsel to have pursued the motion to suppress. The deputies' observation of items on the backseat and the rear floorboards of the car when they ordered defendant out of the car "was not a 'search' in the constitutional sense because they were in plain view and the officer already had a right to be in the position to have that view." (*People* v. *Rogers* (1978) 21 Cal.3d 542, 549 [146 Cal.Rptr. 732, 579 P.2d 1048]; (see *People* v. *Lopez* (1963) 60 Cal.2d 223, 241 [32 Cal.Rptr. 424, 384 P.2d 16] [traffic stop].) There is no question about the legality of the stop.

The convictions on the two counts of burglary and the count of grand theft are affirmed. The conviction for receipt of stolen property is reversed.

Affirmed in part and reversed in part.

Ashby, J., and Hastings, J., concurred.

A petition for a rehearing was denied November 21, 1980, and the opinion was modified to read as printed above.