[Crim. No. 11474. Third Dist. Apr. 28, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
DEWEY GILBERT STILTNER, Defendant and Appellant.

COUNSEL

Carol E. Hawes, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Charles P. Just and Nancy Sweet, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**REGAN, Acting P. J.**—Defendant was convicted by a jury of robbery (Pen. Code, § 211) and forced oral copulation. (Pen. Code, § 288a, subd. (c).) The jury found that defendant was armed with a firearm (pistol) and used it in both offenses and, as to the crime of oral copulation, the jury found that defendant was also armed with a deadly weapon (a knife). Defendant appeals from the judgment sentencing him to 14 2/3 years in prison.

FACTS

The victim of both crimes, Mrs. G., debarked about 1 a.m. from a Greyhound bus in Oroville. The bus station was closed and she went to a nearby phone booth, phoned her husband at their home and asked him to come to get her. While waiting, she saw two men approaching who had been on the bus with her. One of them was defendant. He grasped her by the arm, placed a handgun to her side and led her to the back of the bus station where he ordered her to produce her wallet. She did so and handed him a $5 and a $10 bill. He examined the wallet, threw it down and, holding the gun to her head, ordered Mrs. G. to orally copulate him. She had commenced to do so when she heard her husband's truck pull up in front of the bus station. She informed defendant of this and he let her go. She went to her husband's truck, asked him to depart quickly and then told him what had happened. En route home they saw a patrol car and reported the crimes. Mrs. G. described her assailant to the patrolman and again at the police station.

About 1:35 a.m. an Oroville police officer, Douglas Nisson, who had heard a broadcast description of defendant (particularly including a

shiny earring in his left ear), saw defendant and another man walking on the street. Nisson pat-searched defendant for weapons and found a loaded blue steel .22 magnum revolver in his waistband under his jacket, and a fishing-style knife protruding between the coat tails of his jacket in one of his back pockets. Defendant said "You found it. I guess you got me." Mrs. G. was taken to the area where defendant had been searched and detained. She made an immediate, positive identification of defendant.

Defendant was arrested and placed in the patrol car. On the way to the police department, defendant said, "The other guy's just a wino. It's my gun. I'll take the rap for the whole thing."

Defendant was searched more thoroughly at the police station and in his shirt pocket was found $26—two $5 bills, one $10 bill and six $1 bills. Defendant said, "That's more money than she had." Additionally, the officers removed a metal earring from defendant's left ear.

While defendant was being booked, he stated several times that what they had taken from his person was "more money than she was robbed of ... [t]hat ought to tell you something."

On direct examination at trial, defendant admitted having robbed Mrs. G. and having forced her to orally copulate him. However, on cross-examination, he denied the forcible oral copulation and said that they never got to that because the victim's husband arrived. He said he had been drinking alcohol to excess prior to the acts.

Defendant admitted on cross-examination to having been convicted in 1979 of a felony (stealing or "misappropriating" a car) and to having served time in prison for that.

### Discussion

### I

Defendant contends the trial court erred in not "initiating" proceedings to determine defendant's competence to stand trial. (Pen. Code, §§ 1367 and 1368.) In essence those sections provide that if during the pendency of an action a doubt arises in the mind of the judge as to the mental competence of the defendant (defined as a mental disorder or developmental disability to the extent the defendant is unable to under-

stand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner), the judge shall state that doubt in the record, inform counsel and allow or require the question to be determined in a hearing before any further criminal proceedings are taken.

Defendant cites the following factors as justification for competency proceedings: (1) his expressed concern over "scoliosis"[1] (which he called "softening of the bones"); (2) his concern over the absence of a gag order to protect the reputation of the victim; (3) his claim that he had been unable to communicate with his attorney; (4) his conduct in taking the stand and then confessing; and (5) what he characterizes as his "incoherent responses to the Judge's questions" and his "irrelevant comments . . . ."

We fail to find these factors or any other matters contained in the record as substantial evidence of mental incompetency requiring a hearing on his competence as a matter of law.

■ Section 1368 imposes upon the trial judge the duty, on his own motion, to inquire into the mental capacity of a defendant to stand trial whenever evidence presented during trial or prior to sentencing raises a bona fide doubt in this respect. (*In re Davis* (1973) 8 Cal.3d 798, 808 [106 Cal.Rptr. 178, 505 P.2d 1018]; *People v. Coogler* (1969) 71 Cal. 2d 153, 168, fn. 7 [77 Cal.Rptr. 790, 454 P.2d 686]; *People v. Pennington* (1967) 66 Cal.2d 508, 520 [58 Cal.Rptr. 374, 426, P.2d 942].) The doubt which triggers the obligation of the trial judge to order a hearing is not a subjective one but rather a doubt determined objectively from the record. (*People v. Humphrey* (1975) 45 Cal.App.3d 32, 36 [119 Cal.Rptr. 74].) Evidence which raises merely a suspicion of lack of present sanity but which does not purport to state facts of a present lack of ability through mental illness to participate rationally in a trial is held not to be substantial evidence of lack of present sanity. (*People v. Laudermilk* (1967) 67 Cal.2d 272, 282 [61 Cal.Rptr. 644, 431 P.2d 228]; *People v. Humphrey, supra*, at p. 36.)

A defendant is entitled to a section 1368 hearing as a matter of law only if there is presented substantial evidence showing his mental incompetency. (*Pate v. Robinson* (1966) 383 U.S. 375 [15 L.Ed.2d 815, 86 S.Ct. 836]; *People v. Pennington, supra*, at p. 518; *People v. Zatko*

[1]Defined in Stedman's Medical Dictionary (22d ed.) as a "lateral curvature of the spine."

(1978) 80 Cal.App.3d 534, 547 [145 Cal.Rptr. 643].) The substantial evidence test is satisfied if a psychiatrist or psychologist who has had a sufficient opportunity to examine the accused, states that in his professional opinion the accused is incapable due to mental illness of understanding the purpose or nature of the proceedings against him or is incapable of assisting in his defense or cooperating with his counsel. (*People* v. *Beivelman* (1968) 70 Cal.2d 60, 71 [73 Cal.Rptr. 521, 447 P.2d 913]; *People* v. *Laudermilk, supra*, at pp. 287-288; *People* v. *Pennington, supra*, at p. 520; *People* v. *Corona* (1978) 80 Cal.App.3d 684, 727 [145 Cal.Rptr. 894].) There was no medical evidence here on this point.

In the case of the presentation of substantial evidence, the trial court has no discretion to exercise insofar as the decision to hold a hearing is concerned. (*People* v. *Zatko, supra*, at p. 547.) If, on the other hand, the evidence of present incompetency is less than substantial, whether or not to order a hearing is within the discretion of the trial judge. (*People* v. *Beivelman, supra*, at p. 71; *People* v. *Zatko, supra*, at p. 547.) "[O]nly where a doubt as to sanity may be said to appear as a matter of law or where there is an abuse of discretion may the trial judge's determination be disturbed on appeal." (*People* v. *Beivelman, supra*, at p. 71.) We find no abuse of discretion.

## II

We are not persuaded by defendant's contention that he was deprived of effective assistance of counsel at trial, in that his counsel was incompetent in the following respects: (a) failure to develop a defense of diminished capacity due to mental disease or defect or insanity; (b) failure to object to impeachment of defendant with a prior felony conviction or to obtain defendant's criminal record before placing him on the stand; and (c) failure to respond effectively or adequately when defendant confessed on the witness stand. The record does not enable defendant to meet his burden of establishing these claims on appeal. (See *People* v. *Camden* (1976) 16 Cal.3d 808, 816 [129 Cal.Rptr. 438, 548 P.2d 1110].) Defendant is required to show on appeal that his trial counsel failed to act in a manner to be expected of a reasonably competent attorney, acting as a diligent advocate, and that counsel's acts or omissions resulted in the withdrawal of a potentially meritorious defense. (*People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) Once defendant has met *that* burden, the appellate court must look to see if the record contains any explana-

tion for the challenged aspect of the representation and, if it does, the court must inquire whether the explanation demonstrates that counsel was reasonably competent. For example, where the record shows counsel's omissions resulted from an informed tactical choice within the range of competence, counsel has not been shown to have been ineffective. (*Ibid.*)

If, on the other hand, the record "does not illuminate the basis for the challenged acts or omissions, a claim of ineffective assistance is more appropriately made in a petition for habeas corpus." (*Id.*, at p. 426.)

We shall apply the *Pope* principles to the various areas of plaintiff's contention.

*Mental Defenses*

The record fails to provide any evidence that mental defenses existed which counsel was delinquent in failing to develop.

Defendant's crime was not senseless or motiveless. The record discloses a total lack of medical evidence which might suggest to counsel that such a defense should be pursued. Defendant's statements at trial that he had been in a mental institution were self-serving and made too late for a mental defense to be pursued at trial. It was defendant's claim to his attorney, until the time of trial, that he did not commit the offenses charged, but that his companion did. It does not appear that defendant suggested to his counsel at any time that his conduct on the night in question was affected by a mental condition. (See *People v. Beagle* (1972) 6 Cal.3d 441, 459-460 [99 Cal.Rptr. 313, 492 P.2d 1].) We find no facts which would necessarily have triggered any obligation by defense counsel to investigate a defense based upon defendant's mental condition since the record provides insufficient evidence that such a "mental condition" existed.

Moreover, defendant has not demonstrated that the failure to have undertaken investigation of the mental defenses, if such failure existed, amounted to a withdrawal of a potentially meritorious defense. (See *People v. Cruz* (1980) 26 Cal.3d 233, 255 [162 Cal.Rptr. 1, 605 P.2d 830]; *People v. Beagle, supra*, at pp. 459-460.) Two psychiatrists appointed *after trial* for a different purpose were of the opinion that defendant did not show signs of a significant or serious mental disorder.

Defendant points out his behavior may have been affected by drugs or alcohol on the night of the crime. There was testimony from defendant he was taking medication and had consumed some alcohol. However, instructions on diminished capacity due to voluntary intoxication were given at his trial. He was not deprived of any defense in respect to the medication and alcohol.

*Use of Prior Conviction and Conduct of Counsel Upon Disclosure of Prior Conviction by Defendant.*

■ The court and defense counsel collectively informed him of his constitutional rights not to testify, and that anything he said would be subject to cross-examination; also, the prosecutor could ask him about prior felony convictions. All this was explained in open court before defendant testified. Defendant indicated that he wished to waive his rights and testify.

At a bench session out of the hearing of the jury, and before defendant testified, the subject of his prior convictions was raised. The prosecutor indicated he had records of some prior convictions but they were "not necessarily" the type of offenses that could be used for impeachment; and added, "the priors I don't intend to use." At the same time the prosecutor expressed concern about the statement to the jury by defense counsel that if defendant had any prior felony convictions, he could be asked about them; he felt from that statement the jury would have the impression defendant had no prior felony convictions in the event the prosecutor failed to ask him about them. During this bench session defendant volunteered that his record is "that long" and that he had spent 21 of his 37 years in prison and two years in a mental institution.[2] Defendant indicated that he was confined most recently in 1979, for renting a car and taking it. The court then suggested that was a permissible prior with which to impeach defendant and found defense counsel's statement before the jury to have been proper.

At that point, defense counsel asked that the record reflect that defendant by his testimony insisted, over his attorney's advice, on revealing his prior criminal record to the jury. The court then informed defendant the prosecutor could properly impeach him with prior convictions showing dishonesty or stealing.

---

[2]The record discloses this development was against his counsel's advice and took counsel by surprise.

Later, on cross-examination, defendant admitted the 1979 felony conviction involving stealing or "misappropriating" a car, for which he "served time."[3]

Counsel was not ineffective for failure to have objected to the impeachment of defendant with the 1979 prior felony conviction, which involved dishonesty. (*People* v. *Beagle, supra,* 6 Cal.3d at p. 453; *People* v. *Madaris* (1981) 122 Cal.App.3d 234, 239 [175 Cal.Rptr. 869].) Counsel is not required to make motions that would be futile. (See *People* v. *Lawrence* (1980) 111 Cal.App.3d 630, 641 [169 Cal.Rptr. 245]; *People* v. *Adams* (1980) 101 Cal.App.3d 791, 800 [162 Cal.Rptr. 62].)

Defendant claims "there was no evidence presented which would indicate that the prosecutor was prepared to prove the prior felony conviction . . . ." From this, he argues defense counsel's failure to have objected to the impeachment with the 1979 prior conviction constituted ineffective assistance of counsel. The record is insufficient to show with certainty what the prosecution was prepared to prove in relation to the prior conviction. For that reason, defendant's contention cannot succeed on appeal. (See *People* v. *Russell* (1980) 101 Cal.App.3d 665, 669 [161 Cal.Rptr. 735].) However, the record, inadequate as it is, does suggest the prosecutor was aware of his prior criminal record and had some documentation containing a summary of appellant's prior convictions.[4]

Defendant's assertion that defense counsel "brought the prior to the attention of the jury" is not supported by the record. Counsel, in laying a foundation of a waiver of rights by defendant asked him if he knew he could be impeached by certain prior felony convictions. Counsel did not say defendant had any such convictions. The *prosecutor* ultimately and properly impeached him with a prior felony conviction.

Defense counsel did not provide ineffective assistance of counsel by warning defendant before the jury of the possibility of impeachment

---

[3]Defendant argues that a prior "misdemeanor" cannot be used to impeach credibility. No objection was made at trial that the 1979 conviction was inadmissible due to the fact that it was a misdemeanor. Therefore, there is nothing in the record which demonstrates incompetency for failure to object on that basis. However, defendant at the hearing on the conviction admitted to serving time in prison on the 1979 conviction, which was for renting a car and "taking it." That statement indicates the conviction was in fact a felony.

[4]Defense counsel's failure to request proof of the conviction (on the record) is attributable to the fact that he could see the documentation during the hearing. Without more of a record, this court will not assume incompetency for failure to have objected on the basis of lack of proof.

with prior felonies. The record shows defense counsel was at least partly aware of defendant's record prior to trial, having conferred with him, and since counsel and defendant disagreed at the bench session over whether defendant should tell the jury about his prior record. Defendant insisted the jury be told of his prior record; such insistence was against his attorney's advice, and appears to have taken counsel by surprise. When a defendant insists on testifying over his attorney's objections it does not, ipso facto, raise a question of incompetence of counsel. (*People* v. *Robles* (1970) 2 Cal.3d 205, 214-215 [85 Cal.Rptr. 166, 466 P.2d 710].) Knowing what defendant intended to disclose to the jury, counsel assured a knowing assumption of the consequence of the exercise of his rights by defendant prior to his testimony. This reaction, far from being incompetence, was a reasonable attempt under the circumstances to prevent damaging testimony by his client.

Defendant has not demonstrated that any act or omission of counsel resulted in the withdrawal of a potentially meritorious defense. It is not apparent what defense was foreclosed by counsel's failure to object to the impeachment by the prior conviction. (*People* v. *Lanphear* (1980) 26 Cal.3d 814, 828, fn. 6 [163 Cal.Rptr. 601, 608 P.2d 689].) In fact, in his brief, defendant admits that the "revelation of [his] prior felony may not be adjudged as materially affecting the outcome of this case .... " ■ Defendant was not prejudiced by defense counsel's failure to prevent him from testifying, since absent the testimony the evidence would have left the prosecution with a conclusively established case. (See *People* v. *Hill* (1976) 64 Cal.App.3d 16, 33 [134 Cal.Rptr. 443].) By testifying, defendant had an arguable diminished capacity due to voluntary intoxication defense. Without his own testimony, he would have had no defense.

### III

Defendant raises three sentencing issues. He contends (a) he cannot be punished for both the robbery and forced oral copulation since the two crimes constituted one "indivisible course of conduct," and (b) enhancements of his sentence involving both the knife and the gun were erroneous. We find his contentions to be without merit.

Defendant was sentenced to consecutive terms for robbery and forcible oral copulation. The sentences on both offenses were enhanced by weapons findings. As to the robbery count, it was found by the jury that

defendant was armed with and used a pistol. On this count, the court applied the two-year general enhancement for use of a firearm as prescribed in Penal Code section 12022.5. As to the oral copulation count, it was also found by the jury that defendant was armed with and used a pistol. In addition, it was found as to the oral copulation count that defendant was armed with a deadly weapon, a knife. Consequently, on this count the court applied the enhancements provided in Penal Code section 12022.3, subdivisions (a) and (b), calling for enhancements in forced oral copulation cases of three years for "use" of a firearm or any other deadly weapon (subd. (a)) or two years for being "armed" with a firearm or any other deadly weapon. The total unstayed enhancements imposed, however, were five and two-third years.

We look first to the "double punishment" issue. Penal Code section 654 prohibits the imposition of punishment for more than one violation arising out of an "act or omission" which is made punishable in different ways by different statutory provisions. Defendant argues he cannot be punished for both the robbery and forced oral copulation because the two crimes constituted an indivisible course of conduct. He also argues that punishment for the enhancements involving both the knife and gun constituted a violation of Penal Code section 654.

Section 654 limits punishment for multiple convictions arising out of either an act or omission or a course of conduct deemed to be indivisible in time, in those instances wherein the accused entertained a principal objective to which other objectives, if any, were merely incidental. Defendant's objective and intent must be ascertained. If he entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct. (*People* v. *Beamon* (1973) 8 Cal.3d 625, 639 [105 Cal.Rptr. 681, 504 P.2d 905]; *Burris* v. *Superior Court* (1974) 43 Cal.App.3d 530, 535 [117 Cal.Rptr. 898]; *People* v. *Coleman* (1973) 32 Cal.App. 3d 853, 858 [108 Cal.Rptr. 573].)

Defendant asserts his acts constituted an indivisible course of conduct because the victim "suggested" he take her money, whereas all he was interested in was "sexual conduct." However, the evidence produced at trial shows defendant entertained multiple criminal objectives independent of each other, for which he can be separately punished.

Defendant forced the victim at gunpoint, to the rear of the building. When the victim told him she would give him the money she had, he ordered her to remove it from her wallet; when she gave him $15 he asked if she had any more. He then looked through her wallet. After finding the wallet contained no more money, defendant threw it down and told the victim "money wasn't all [he] wanted ... [he] wanted '[sex]', too." Defendant then forced the victim to orally copulate him.

■ Penal Code section 654 has no application where a robber, after receiving the fruits of his robbery, assaults the victim with an intent other than to effectuate the robbery. (*People v. Williamson* (1979) 90 Cal.App.3d 164, 172 [153 Cal.Rptr. 48]; *People v. Beaumaster* (1971) 17 Cal.App.3d 996, 1008-1009 [95 Cal.Rptr. 360].) Here, defendant's sexual assault after the robbery, was motivated by sexual gratification, an objective independent of the robbery. Defendant was properly punished both for the forced oral copulation and for the robbery. (See *People v. Helton* (1979) 91 Cal.App.3d 987, 992 [154 Cal.Rptr. 482].)

■ Defendant's argument that section 654 precludes application of both the knife and gun enhancements is misplaced. Section 654 has been held inapplicable to enhancements because they ""do not define a crime or offense but relate to the penalty to be imposed under certain circumstances."" (*People v. Walker* (1976) 18 Cal.3d 232, 242 [133 Cal.Rptr. 520, 555 P.2d 306]; *People v. Boerner* (1981) 120 Cal.App. 3d 506, 511 [174 Cal.Rptr. 629]; *People v. Superior Court (Grilli)* (1978) 84 Cal.App.3d 506, 512 [148 Cal.Rptr. 740].)

■ Defendant challenges the fact that the base term for forcible oral copulation was enhanced, pursuant to Penal Code section 12022.3, subdivisions (a) and (b), *both* for his possession of a knife and use of a firearm during the commission of the crime at issue.[5]

■ Defendant's argument that the evidence was insufficient to support the jury's finding of truth in the allegation that he was armed with a deadly weapon (knife) is unsound.

---

[5]Penal Code section 12022.3 reads in its entirety as follows: "For each violation of Section 261, 264.1, 286, 288, 288a or 289, and in addition to the sentence provided, any person shall receive an enhancement (a) of three years if such person uses a firearm or any other deadly weapon in the commission of such violation or (b) of two years if such person is armed with a firearm or any other deadly weapon."

The record shows that before she was accosted, the victim noticed defendant had what she thought was a wooden object protruding from his back pocket that looked like a small nightstick. Later, officers seized what was determined to be a fishing-style knife from defendant's back pocket. This constitutes substantial evidence to support the jury's finding on the knife enhancement.

A person is "armed" with a deadly weapon when he simply carries a weapon or has it available for use in either offense or defense. (*People v. Reaves* (1974) 42 Cal.App.3d 852, 856-857 [117 Cal.Rptr. 163].) The evidence shows the knife was carried by defendant in his back pocket, thus available for immediate use for offense or defense. The statute at issue does not require a defendant actually use the weapon for offense or defense, just that he carry it in a manner available for such use.

■ Defendant claims the court's failure to strike the knife enhancement constituted an "abuse of discretion." We hold there was no such abuse.

Defendant's sentence was enhanced since he was armed with a deadly weapon (knife) within the meaning of Penal Code section 12022.3.

Penal Code section 1170.1 describes the manner in which various enhancements are to be charged, proved and imposed. Section 12022.3 is included in the lists of enhancements in the subdivisions of section 1170.1 which describe general provisions involving enhancements. Subdivision (a), provides: "The principal term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes, including any enhancements imposed pursuant to Section 12022, *12022.3*, 12022.5, 12022.6, 12022.7 or 12022.8." (Italics added.) Similarly, section 1170.1, subdivision (e), provides: "The enhancements provided in Sections 667.5, 667.6, 12022, *12022.3*, 12022.5, 12022.6, 12022.7, and 12022.8 shall be pleaded and proven as provided by law." (Italics added.)

However, in the subdivisions of section 1170.1 which refer to the court's power to strike an enhancement, reference to section 12022.3 is significantly omitted. (See § 1170.1, subds. (c) and (g).) Thus, section 1170.1, subdivision (g), which gives the court power to strike the en-

hancements listed in that subdivision, *does not apply* to enhancements imposed per section 12022.3.

The imposition of enhancements pursuant to section 12022.3 is governed in part by section 1170.1, subdivision (h), as follows: "For any violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or sodomy or *oral copulation by force*, violence, duress, menace or threat of great bodily harm as provided in Section 286 or 288a, the number of enhancements which may be imposed *shall not be limited*, regardless of whether such enhancements are pursuant to this or some other section of law. Each of such enhancements *shall* be a full and separately served enhancement and *shall not be merged* with any term *or with any other enhancement.*" (Italics added.)

The frequent use of the word "shall" in section 1170.1, subdivision (h), and the use of the words "shall receive" in section 12022.3, are strongly indicative that the enhancements on those offenses were intended to be mandatory. (See *People* v. *Superior Court* (*Mahle*) (1970) 3 Cal.App.3d 476, 485-486 [83 Cal.Rptr. 771]; see also, *Taylor* v. *McKay* (1975) 53 Cal.App.3d 644, 651 [126 Cal.Rptr. 204].) Such mandatory intent is evident by the Legislature's omission of section 12022.3 from those subdivisions of section 1170.1 which specifically grant a court the power to strike certain other types of enhancements.

Contrary to defendant's assertions, the fact that the Legislature chose to limit the court's sentencing discretion as explained above is not a violation of the separation of powers doctrine, since the Legislature, not the courts, is charged with fixing penalties for crimes. (*People* v. *Tanner* (1979) 24 Cal.3d 514, 519, fn. 3 [156 Cal.Rptr. 450, 596 P.2d 328].)

Defendant's final contention is that the actual language of section 12022.3, allows only *one* enhancement for a weapon to be made pursuant to that section. He emphasizes the use of the word "or" in Penal Code section 12022.3 between subdivisions (a) and (b) thereof. But we must read section 12022.3 (see fn. 5, *ante*) together with section 1170.1, subdivision (h), providing that for certain enumerated sex offenses (including forcible oral copulation) the number of enhancements which may be imposed shall not be limited; such enhancements are to be served separately and are not to merge with any term or with any other enhancement. The provisions of subdivision (h) contrast markedly to

those in subdivision (d) of section 1170.1, which subdivision specifically limits weapon enhancements to one in most cases.[6] Subdivision (d) significantly does not include enhancements pursuant to section 12022.3.

As we read subdivision (h), enhancements to certain sex offenses (covered by § 12022.3) are to be unlimited. (See *People* v. *Edwards* (1981) 117 Cal.App.3d 436, 448 [172 Cal.Rptr. 652].)

Section 12022.3 by its language, provides for a mandatory enhancement in the event a defendant is either armed with (subd. (b)) or uses (subd. (a)) a firearm or other deadly weapon in the commission of certain sex offenses. Looking at the statutory pattern as a whole, we do not agree with defendant that by the use of the word "or" in section 12022.3 the Legislature has prohibited enhancement for more than one weapon in those certain enumerated sex offenses. The statutes must be construed together and be reconciled so as to uphold and give effect to all of them if reasonably possible. (*Modesto Irr. Dist.* v. *City of Modesto* (1962) 210 Cal.App.2d 652, 656 [27 Cal.Rptr. 90]; see also, *People* v. *Grisso* (1980) 104 Cal.App.3d 380, 386 [163 Cal.Rptr. 547].) The language of section 12022.3 does not limit enhancements for the offenses listed to only one weapon. It is more reasonable to assume, in light of the language of section 1170.1, subdivision (h), that section 12022.3 was meant to provide that *if* a defendant has in his possession a firearm or deadly weapon during the commission of a sex offense, his sentence *must* be enhanced for either use *or* being armed with *that* weapon, if his acts relative to that weapon qualify as use or arming. The use of the word "or" merely suggests two alternative enhancements for a single weapon. *Each* weapon a defendant arms himself with or uses during such sex offenses is subject to the provisions of section 12022.3. If enhancements were to be limited as suggested by defendant, the purpose of section 1170.1, subdivision (h), would be thwarted in cases such as the present one.[7]

---

[6]Section 1170.1, subdivision (d), provides: "When two or more enhancements under Sections 12022, 12022.5, and 12022.7 may be imposed for any single offense, only the greatest enhancement shall apply; however, in cases of robbery, rape or burglary, or attempted robbery, rape or burglary the court may impose both (1) one enhancement for weapons as provided in either Section 12022 or 12022.5 and (2) an enhancement for great bodily injury as provided in Section 12022.7."

[7]Defendant cites *People* v. *Bennett* (1976) 60 Cal.App.3d 112 [131 Cal.Rptr. 305], for the proposition that weapons enhancements may be limited. *Bennett* is of no help to defendant under the facts of this case. As noted above, under other weapons enhancement provisions (e.g. § 1170.1, subd. (d)), weapons enhancements are to be limited;

The judgment is affirmed.

Evans, J., and Sparks, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 14, 1982.

---

however, that limitation on such weapons enhancements does not apply to enumerated sex offenses. (§ 1170.1, subd. (h).) *Bennett* involved the weapons enhancement provisions which are subject to limitation, even if two weapons are involved. (*People* v. *Vizcarra* (1980) 110 Cal.App.3d 858, 863-864 [168 Cal.Rptr. 257]; see also *People* v. *Whitehouse* (1980) 112 Cal.App.3d 479, 484 [169 Cal.Rptr. 199].) Additionally, *Bennett* and cases which express the same rule announced in *Bennett* involved multiple enhancements *for the same weapon*; enhancement may only be done on one basis, either arming or use, *for that one weapon.* (See *People* v. *Wischemann* (1979) 94 Cal.App.3d 162, 175 [156 Cal.Rptr. 386]; *People* v. *Johnson* (1978) 81 Cal.App.3d 380, 390 [146 Cal.Rptr. 476]; *People* v. *Bennett, supra,* at pp. 119-122.) As noted, defendant received enhancements for the use of *two* weapons.