[Crim. Nos. 7926-7928. In Bank. Dec. 28, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. SIDNEY LINCOLN WESTBROOK, Defendant and Appellant.

(Three Cases.)

Cy H. Lemaire, under appointment by the District Court of Appeal, and Marvin Katz for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

PETERS, J.—Defendant has appealed from three separate judgments.[1] The three appeals have been consolidated.

There is no doubt that defendant committed the acts with which he was charged. That is not disputed. The basic question presented on all three appeals is whether or not the trial courts involved properly handled the issue of the present sanity of the defendant. We are of the opinion that they did not, and for that reason the judgments must be reversed.

Defendant was originally charged with one count of grand theft (Pen. Code, § 487, subd. 3) and a second count of automobile theft (Veh. Code, § 10851). At the time of arraignment his counsel raised the question of present sanity, and in support thereof filed a report of one Henry M. Hamilton, M.D., a psychiatrist employed by the defense. In that report Dr. Hamilton stated that in his opinion, based on electroencephalography and other examinations, defendant suffered from brain damage, and was neither responsible at the time of the commission of the crime, nor sane "within the meaning of Section 1368 PC."[2] After discussion of the claim, and with no other report or evidence on the issue, the trial judge continued the matter for plea, and referred the case to Department 95

---

[1]Defendant was originally found guilty of automobile theft. Prior to pronouncement of sentence he was granted probation. Subsequently he was charged with theft and forgery. The hearing on revocation of the probation granted on the first offense was consolidated with the trial of these later charges. He pleaded guilty to these later charges and was sentenced to imprisonment on all three for the period prescribed by law. The appeals are from these three judgments.

[2]Section 1367 of the Penal Code prohibits the trial or punishment of a defendant while insane. The type of insanity which would bar trial has been judicially determined to be an inability to understand the nature and purpose of the proceedings or to aid his attorney in conducting his defense or to conduct his own defense in a rational manner. (*People v. Merkouris*, 52 Cal.2d 672, and cases cited at p. 678 [344 P.2d 1].)

Section 1368 provides that if at any time prior to judgment a doubt arises as to defendant's sanity, the court must suspend all other proceedings and cause the issue of sanity to be determined by separate trial. The section authorizes such separate trial to be by the court, sitting without a jury, unless a jury be demanded. The "doubt" referred to is doubt in the mind of the trial judge (*People v. Merkouris, supra*).

(Psychiatric Department) of the court, specifically stating that such reference was ''under Section 5047 Welfare and Institutions Code.''[3] There is no record of either trial or hearing in Department 95, but evidently defendant was examined by the psychiatrists there attached, because they filed a report containing the statement that ''Preliminary medical examination indicates that defendant is not mentally ill.''

On the date to which the plea had been continued, defendant was again in the original department, where he pleaded guilty to count II and a probation report was ordered.[4] Subsequently defendant was referred to yet another psychiatrist for examination (to be paid for by defendant's family), and after receiving that report the court dismissed count I, suspended proceedings, and granted five years' probation on condition of payment of a fine and making restitution.[5]

Approximately nine months after defendant had been placed on probation he was again arrested and charged with the crimes which are the basis of the other two appeals. At that time the first matter was transferred to the department hearing the subsequent cases, for a hearing on breach of probation, and the three were heard together. At this point the court ordered another psychiatric examination by still another psychiatrist, and this time under the provisions of Code of Civil Procedure section 1871 (court-appointed expert). That examination resulted in a report that was mostly history given by the defendant, and although it contained what purported

[3]Section 5047 of the Welfare and Institutions Code is the first section of the article dealing with apprehension, hearing and examination of mentally ill and insane persons. It provides for the filing of a verified petition in the superior court alleging that the person named therein ''is mentally ill and in need of supervision, care, or treatment. . . .'' It further provides that if no relative or friend is able or willing to file, the petition may be filed by any peace officer, probation officer, private physician or physician attached to a public institution. No provision is made for hearing, trial or investigation of any kind in the absence of such petition, nor have we been cited to any statutory authority for an order of detention or examination in the absence thereof.

[4]The facts set forth are taken from the record. However, the record up to this point (and beyond) consists solely of the clerk's transcript and the superior court's minutes and papers, inasmuch as the reporter's transcript starts *after* the commencement of the second proceeding. As a result, we are uninformed of the nature of the various prior discussions between court and counsel, particularly in regard to the issue of present sanity.

[5]Unfortunately, in its order of reference to this psychiatrist the court posed six questions, all concerning the value which defendant might receive from psychiatric treatment or hospitalization. As a result, the report (although lengthy and thorough) makes no evaluation of present sanity. It was undoubtedly the court's intent to utilize that examination and report for the purpose of determining the motion for probation.

to be "Findings and Opinions," it contained no express opinion regarding present sanity. On receiving that report, the court again referred the matter of possible mental illness to Department 95. At this point the reporter's transcript commences, and there is a direct conflict between that transcript and the clerk's minutes as to the court's purpose in making that transfer. The clerk's minutes (which are, of course, only what the clerk interpreted the order to be) state that the matter is transferred for medical examination, and that *if after* such examination "it is believed that the defendant is possibly mentally ill, a petition in reference thereto is ordered filed." On the other hand, the reporter's transcript shows that after the court read the psychiatrist's report, the following took place:

"THE COURT: There is something wrong with this boy.

"MR. SCHOENHEIT [Deputy Public Defender]: So would your Honor send him to 95?

"THE COURT: I will direct the sheriff to file a petition under 5047 of the Welfare and Institutions Code in Department 95.

"How long do we continue then?

"THE CLERK: Two weeks.

"THE COURT: It will be continued two weeks from today at 9:30."

It would appear from the clerk's minutes that the court intended the reference to Department 95 to be merely for the purpose of examination and report, reserving until a later date the determination of its doubt or lack of doubt as to defendant's sanity. On the contrary, the reporter's transcript expressly states that the trial judge intended a full determination of present sanity to be made by Department 95 under a petition alleging mental illness. In either event, the record does not show that there was any trial in Department 95. The file of the superior court (which is before us as part of an augmented record on appeal) contains two reports (on the same printed forms used when a defendant is held under verified petition alleging mental illness) from the psychiatrists attached to Department 95. Those reports refer to the examinations made almost a year previously, and repeat the finding of no mental illness. However, neither of those reports is referred to in either the clerk's or reporter's transcripts. Instead, when the matter was called after the two-week continuance, defendant was arraigned and pleaded guilty, and the matter continued for probation report. Thereafter probation was denied and defendant sentenced to prison for the

term prescribed by law. At the time of sentence, the judge, after a long dissertation on the subject, stated that the defendant could not be released on probation because: (1) he would only repeat his crimes; (2) he undoubtedly had a sex problem;[6] and (3) he was undoubtedly in need of psychiatric help. Then, without any reference to the law applicable to sexual psychopaths, he pronounced sentence and added that he would recommend to the authorities that defendant be given psychiatric treatment.

Within the time in which to appeal, defendant filed, in propria persona, a handwritten document in each case. These documents have been treated as notices of appeal. Actually, each is a combination of a statement that defendant desires to appeal, a request that he be allowed to change his plea to "innocent by reason of insanity," and a plea to be hospitalized for his mental illness.

Counsel, appointed on appeal, raises two issues. The first is that both the first and second trial courts failed to comply with the provisions of Penal Code section 1368, in that defendant was not afforded a trial on the issue of present sanity, even though there was a clear doubt expressed. The second is based on the contention that the attempt to change plea as contained in the notices of appeal was, in effect, an application for writ of error *coram nobis*.

The second issue will be discussed first. ▮ It is true than an attempt to change pleas after judgment should be treated as a petition in *coram nobis,* but it is also true that such an application must be made in the first instance to the trial court (*People* v. *Grgurevich,* 153 Cal.App.2d 806, 810 [315 P.2d 391]; *People* v. *Wade,* 53 Cal.2d 322, 339 [1 Cal. Rptr. 683, 348 P.2d 116]). This was not done here, probably because the clerk did not recognize defendant's plea in propria persona for what it was, and thus did not call it to the attention of the trial judge. Normally we would merely remand all proceedings to the trial court with instructions to pass upon the application for *coram nobis* before proceeding with the appeal.

▮ However, the bare request to change pleas contained no express reason, fact or ground sufficient to justify relief. In

---

[6]Although none of the offenses with which defendant was charged included matters relative to sexual psychopathy, both the probation reports and the psychiatric reports (with all of which the court was familiar) refer to the existence of such a condition, and indicated abnormal sexual activities since age 9. Included therein are records of innumerable child molestations, at least three arrests, a history of having been made a ward of the court, and one commitment to Preston, all for such offenses, and without any commitment to a psychiatric hospital.

its present form the trial court could have done nothing but deny it. Therefore, we shall consider the appeals. It should not be inferred from such statement that we are passing upon the merits of the application in the first instance. (See *In re De La Roi*, 28 Cal.2d 264 [169 P.2d 363], holding that such an application must first be determined in the trial court.) Regardless of our decision on the other issue presented, defendant will not be precluded, when his instant appeals become final, from addressing a proper application for *coram nobis* to the superior court, including the requisite factual allegations.

In answer to appellant's main contention, the Attorney General argues that no hearing on the issue of present sanity was required because no request for such a hearing was made. No such request is necessary. The statute requires the issue of present sanity to be tried if "a doubt arises." The doubt is in the mind of the trial judge, and cannot be affected or waived by defendant or his counsel. (See *People v. Ah Ying*, 42 Cal. 18, 21; *People v. Vester*, 135 Cal.App. 223, 233 [26 P.2d 685].) Determination of the issue before us requires an answer to the question whether either trial judge (or both) entertained such a doubt.

Due to the meagerness of the record, we do not have before us all that transpired between court and counsel, but we do know that each judge suspended proceedings during the period that the cause was transferred to the psychiatric department. If the purpose was merely to inquire into the defendant's mental condition as an aid to determination of a request for probation, no such transfer was required. The court could (and in one of the three cases before us did) require examination by an appointed psychiatrist, without transfer of the cause. If there was an economic basis for desiring examination by the psychiatrists attached to Department 95, such psychiatrists could have been appointed. Furthermore, the fact that one judge made the transfer before arraignment negatives any possibility that he was seeking aid in the determination of probation. Thus, the two orders transferring the cause to Department 95 for independent proceedings must have been activated by a doubt as to the defendant's then sanity. In fact, the record shows that on the first transfer the court implied that a complaint charging mental illness should be filed in Department 95, and on the second such occasion the trial judge expressly stated that he was ordering the sheriff to file a complaint in that department. The only

statutory reference to such a complaint appears in Welfare and Institutions Code section 5047, and clearly indicates that its purpose is to commence a proceeding for the determination of present mental illness, and disposition of the patient if found to be mentally ill.

It may be that this interpretation of the facts fails to recognize some unstated custom or streamlined procedure practiced by the Los Angeles courts, but such interpretation need do no violence to such practice in the future, so long as the trial judge makes a proper record of the reasons for his actions. Absent such, we have no basis on which to consider the transfers to Department 95 as having been made for any purpose other than to determine defendant's then condition of sanity. It must be held that each trial judge expressed, by his actions, a doubt as to defendant's sanity. Having expressed such doubt, it was his duty to comply with the mandate of Penal Code section 1368, and try that issue.

The Attorney General contends that the proceedings which took place below satisfied the requirement last mentioned, contending that the transfer of the cases to Department 95 was proper. The contention misses the point. We do not hold that the transfers to Department 95 were improper. If such had resulted in a full and fair trial, containing all of the elements of due process, such would constitute a compliance with section 1368 of the Penal Code. But here (even though one judge stated that he would order a complaint filed) there is no hint that such a trial was ever had. Several psychiatrists examined defendant and reported back to the trial judge. It is no answer that the trial judge may have resolved his previously expressed doubt on receipt of those reports.

The trial judge having once expressed his doubt, and set the machinery in motion, could not divest defendant of his right to have the issue tried as contemplated by the statute. The failure to follow through denied defendant one of his substantial rights (*People* v. *Jackson,* 105 Cal.App.2d 811, 815-816 [234 P.2d 261]). Nothing in *People* v. *Merkouris, supra,* 52 Cal.2d 672 (which pointed out the distinction between the trial judge's action in expressing a clear doubt and in referring defendant to psychiatric examination in order to determine if there should be a doubt) is contrary to such a conclusion.

For the foregoing reasons reversals are required. In addition the record discloses other considerations not mentioned by appellant that support the conclusion that the problems here involved require further consideration at the trial level.

■ First, the record demonstrates that, as shown by three of six psychiatric reports, several probation reports, one letter written by defendant to the trial judge, and the remarks of the second trial judge, this defendant needs and has been begging for hospitalization and treatment for a psychiatric condition. He has told the doctors, probation officers and the judge that he should not be granted probation without treatment for the reason that he will repeat his crimes under such conditions. He has stated that incarceration will be of no help because of his one experience (Preston), and that he views Vacaville as just ''another prison for queers.'' Such pleas have not been confined to the instant cases, but appear to have been made in prior proceedings in the juvenile court. The record also shows that defendant was born with (and still suffers from) a club foot; that he has a history of having fallen from a window, landing on his head, when 1 year old; that there is present brain damage; that he failed to control his bladder until far past the ordinary age; that commencing at 9 years of age he has been a continuous sexual psychopath; that at the present time (in his twenties) he continues to suck his thumb. Added to this is the fact that defendant has been granted probation on various occasions, but never has been committed to a state hospital for the mentally ill. The court's only answer to his continued pleas is to recommend to the prison authorities that the prisoner be given psychiatric treatment.

As a corollary to this point, it should be mentioned that the record demonstrates that defendant is a sexual psychopath. One of the psychiatric reports mentions a history of between 150 and 200 incidents of child molesting. Many of those incidents occurred on the open street, in daylight, when defendant attempted to remove the panties from young girls with no further explanation than that he wished to see their private parts. That the trial judges were aware of this is clear from the probation reports and from the reported remarks of the second such judge at the time of sentence. Yet it does not appear that at any time any court even considered the propriety of commencing proceedings under the provisions of sections 5500-5522 of the Welfare and Institutions Code (sexual psychopaths). The fact that the instant proceedings did not grow out of sexual crimes is no answer to the court's failure to take the steps prescribed by the statute. Section 5501, subdivision (a), provided at the time of the events here involved that the procedures therein set forth shall apply

"[w]hen a person is convicted of any criminal offense, whether or not a sex offense" and shall be instituted by "the trial judge, on his own motion, or on motion of the prosecuting attorney, or on application by affidavit by or on behalf of the defendant, if it appears to the satisfaction of the court that there is probable cause for believing such a person is a sexual psychopath. . . ." In 1963 the section was amended by substituting for the words "sexual psychopath" the words "mentally disordered sex offender." It is difficult to understand why neither of the two judges here involved took the necessary steps to have this defendant sent to the very institution maintained by the state for such cases. Based on the meager record before us, it would appear that this young man needs and should receive proper treatment for his mental condition.

For all of these reasons it must be held that each of the trial courts here involved committed reversible error in failing to comply with section 1368 of the Penal Code, and that each abused its discretion, after reaching its erroneous decision, in failing to consider proceeding under sections 5500-5522 of the Welfare and Institutions Code.

The judgments are reversed and the entire matter remanded with instructions to proceed in accordance with the views herein expressed.

Traynor, C. J., Tobriner, J., Peek, J., and Dooling, J.* concurred.

McCOMB, J.—I dissent. I would affirm the judgments for the reasons expressed by Mr. Justice Kingsley in the opinion prepared by him for the District Court of Appeal (*People* v. *Westbrook* (Cal.App.) 37 Cal.Rptr. 420).

Schauer, J.,* concurred.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.