[Crim. No. 25193. Second Dist., Div. One. Jan. 31, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN EDWARD HUMPHREY, Defendant and Appellant.

**34**

COUNSEL

Bruce D. Stuart, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Cynthia S. Waldman and Karen R. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**THOMPSON, J.**—In this appeal from judgments imposing concurrent state prison sentences as a result of violations of probation imposed in previously suspended criminal proceedings, appellant contends that the trial court erred in not, on its own motion, conducting a hearing on appellant's present sanity pursuant to Penal Code section 1368 prior to entering judgment. We conclude that the record in the case at bench contains substantial evidence from which the inference is permissible that appellant lacked the capacity to cooperate with counsel or to assist in his defense. We thus reverse the judgments, remanding the matter to the trial court so that it may conduct a hearing pursuant to Penal Code sections 1367 and 1368.

On December 8, 1970, appellant was convicted of the crime of assault with intent to commit great bodily harm. On January 29, 1973, he was convicted of burglary. In each case proceedings were suspended and appellant was placed on probation. On January 17, 1974, the probation officer filed a report recommending that probation be revoked for appellant's failure to pay a fine, failure to report as directed, failure to participate in a program of psychiatric treatment as directed by the probation officer, and continued abuse of his wife, the victim in the assault charge. All these were violations of the terms of appellant's probation. The report notes that appellant is "severely mentally ill" and a "dangerous person" who had threatened to kill the probation officer and who is likely to harm his wife or her children.

Hearing on the report charging violation of probation commenced on January 24, 1974. Pursuant to Evidence Code section 730, the trial court appointed Drs. Ruth Jens and Eulalia Giguette of Gateways Hospital to examine appellant. Dr. Jens, a psychiatrist, basing her report upon

conversations with a Gateways field representative and appellant's mother, upon an interview with appellant, her reading of the probation officer's report and the evaluation of Dr. Giguette, concluded that appellant was a paranoid schizophrenic "dangerous to his wife, his probation officer, and himself . . . [who] requires hospitalization where he can be contained. . . ." Dr. Jens noted appellant's extensive history of institutionalization, including treatment at Colorado State Hospital, 3 courses of treatment at Metropolitan State Hospital, and 10 to 12 admissions to treatment at Long Beach Veterans Administration Hospital. Basing her report upon her testing of appellant, Dr. Giguette concluded that he was "critically mentally ill" and in need of treatment in a closed setting. Dr. Giguette reported that she attempted to test appellant on January 31 but that "When [appellant] saw some of the test forms he suddenly became hysterical by crying out that he could not do the tests." Seen again by Dr. Giguette on February 1, appellant told her he was mentally ill and wanted to enter a hospital. Appellant was unable to perform the tests administered except the Minnesota Multiphasic Personality Inventory and that only by having the "examiner read the questions to him and read them very slowly." Following the inventory, Dr. Giguette questioned appellant concerning his answers. In the course of that questioning, appellant claimed "to see things or animals or people . . . that others do not see." He said that his head "always hurt" and that "when he moves [it] he can feel his brains moving around." He claimed he was followed "by a man from Vietnam" whom he was unable to see but with whom he was able to converse. Appellant has attempted suicide on five occasions. Appellant believed that "[p]eople on the job are plotting against him and trying to steal his thoughts and ideas. Even the little guys in the cells are picking on him and plotting against him." Appellant complained bitterly that his wife and the probation officer were plotting against him.

Pauline Ledeen, Gateways field representative, reported that her interview with appellant disclosed that he complained of loss of memory. This he attributed to too many shock treatments. Appellant did not recall threatening his wife or the probation officer. Appellant stated that he is "always apologizing to people for doing things I don't recall doing." Ms. Ledeen noted that appellant realized "he must give his wife up and would have it appear that he is calm and reasonable. But, the voices do tell him about his wife and probation officer and he 'believes what he hears—and wants to hear.' " Appellant stated that most of the time he did what the voices told him. Ms. Ledeen concluded: ". . . continuance of [appellant's] auditory hallucinations, and expressed resentment toward his wife who, he believes, has lied about his harassment of her,

make [appellant] too potentially dangerous to chance his placement in a hospital which he can leave at will. He requires intensive treatment in a closed setting."

On March 11, 1974, the court reconvened its hearing on the alleged violations of probation and considered the reports of the Gateways Hospital personnel. Counsel for appellant stipulated to a violation of probation, arguing only that appellant should be hospitalized at the Veterans Administration. While stating to appellant that "I'm sure you will not be kept in a hospital any longer than the doctors feel is necessary to keep you in a hospital," the trial court, without ordering a hearing on present sanity pursuant to Penal Code sections 1367 and 1368, revoked probation and reinstituted the suspended criminal proceedings in the two cases on which appellant was on probation. He was sentenced to state prison for the term prescribed by law. This appeal from the resulting judgments followed.

Penal Code section 1367 precludes a person who then is insane from being ". . . tried, adjudged to punishment, or punished for a public offense . . . ." Penal Code section 1368 requires a court to hold a hearing on present sanity ". . . [i]f at any time during the pendency of an action and prior to judgment a doubt arises as to the sanity of the defendant . . . ." ■ The requirements of section 1368 are a codification of a right vested by the Fourteenth Amendment to the Constitution of the United States. (*Pate* v. *Robinson,* 383 U.S. 375 [15 L.Ed.2d 815, 86 S.Ct. 836].) Since in the case at bench criminal proceedings had initially been suspended without imposition of sentence, the trial court lacked power to impose sentence upon the revocation of probation unless appellant was then presently sane. ■ "The sanity contemplated by [Pen. Code, §§ 1367 and 1368] is tested by appraising the present ability of the defendant to so understand the nature and purpose of the proceedings taken against him as to be able to conduct his own defense in a rational manner." (*People* v. *Aparicio,* 38 Cal.2d 565, 567 [241 P.2d 221].) If there is a doubt that a defendant is presently insane, as tested by the applicable standard, "it [is] the duty of the Court, of its own motion, to suspend . . . proceedings in the case . . . until the question . . . [is] determined." (*People* v. *Ah Ying,* 42 Cal. 18, 21; see also *People* v. *Westbrook,* 62 Cal.2d 197, 203 [41 Cal.Rptr. 809, 397 P.2d 545].) The doubt which triggers the obligation of the trial judge to order a hearing on present sanity is not a subjective one but is rather a doubt determined objectively from the record. If there is substantial evidence "of present mental incompetence, [the defendant] is entitled to a section 1368 hearing as a

matter of right . . . ." (*People* v. *Pennington,* 66 Cal.2d 508, 518 [58 Cal.Rptr. 374, 426 P.2d 942].)

While "the question as to what constitutes such substantial evidence . . . [of lack of present sanity] 'cannot be answered by a simple formula applicable to all situations' " (*People* v. *Laudermilk,* 67 Cal.2d 272, 283 [61 Cal.Rptr. 644, 431 P.2d 228]), decisions of our ·Supreme Court establish guidelines which are determinative of the case at bench. In *People* v. *Pennington, supra,* 66 ·Cal.2d 508, substantial evidence of lack of present sanity was found in an opinion of a clinical psychologist supported by "a previous diagnosis of schizophrenia and paranoia, a current diagnosis of a more paranoid condition, defendant's current unfeigned hallucinations, and defendant's fits of psychotic furor . . . in the courthouse and during the trial." (*Pennington,* as characterized in *People* v. *Laudermilk,, supra,* 67 Cal.2d 272, 283.) Conversely, "more is required to raise a doubt than mere bizarre actions [citation] or bizarre statements [citation] or statements of defense counsel that defendant is incapable of cooperating in his defense [citation] or psychiatric testimony that defendant is immature, dangerous, psychopathic, or homicidal or such diagnosis with little reference to defendant's ability to assist in his own defense [citation]." (*People* v. *Laudermilk, supra,* 67 Cal.2d 272, 285; see also *People* v. *Bryant,* 264 Cal.App.2d 901, 905 [71 Cal.Rptr. 117].)

The quoted language of *Pennington* and *Laudermilk* seems an application to the issue of present sanity of the general definition of substantial evidence, i.e., "evidence· that reasonably inspires confidence and is 'of solid value'. . . ." (*People* v. *Bassett,* 69 Cal.2d 122, 139 [70 Cal.Rptr. 193, 443 P.2d 777].) Thus in *Pennington* the opinion of one expert constituted substantial evidence of lack of present sanity although the decision discloses that the expert's conclusion was contraverted by more credible opinion testimony to the contrary. (See 6 Witkin, Cal. Procedure (2d ed.) Appeal, § 249.) Thus, also, in *Laudermilk,* evidence which raised merely a suspicion of lack of present sanity but which did not purport to state facts of a present lack of ability through mental illness to participate rationally in a trial is held not to be substantial evidence of lack of present sanity. (See *People* v. *Redmond,* 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].)

Here we deal with an aspect of the general principle of substantial evidence not involved in either *Pennington* or *Laudermilk.* ▪ Where testimony is uncontradicted but the determination of ultimate fact depends upon inferences to be drawn from it, there is substantial evidence of all inferences that may reasonably be drawn from the

testimony although those inferences may be conflicting. (6 Witkin, Cal. Procedure (2d ed.) Appeal, § 254.) ■ Viewed in light of that principle, the record discloses testimony reasonably supporting the inference that appellant lacked present sanity at the time sentence and judgment were pronounced. He had been committed several times to mental institutions, he was hallucinating and acting in response to his hallucinations, he was unable to cooperate in psychological testing, he suffered from delusions of persecution, he had loss of memory, and he was diagnosed as a paranoid schizophrenic requiring treatment in a closed setting. Assuming that no one of those factors supports the inference of lack of present ability through mental illness rationally to participate in defense of a criminal charge (see e.g., *People* v. *Jensen,* 43 Cal.2d 572, 578-579 [275 P.2d 25]; *People* v. *McBroom,* 264 Cal.App.2d 242, 246-247 [70 Cal.Rptr. 326]), in combination they support the reasonable inference of lack of present sanity within the meaning of Penal Code sections 1367 and 1368. (*People* v. *Aparicio,* 38 Cal.2d 565, 569-570 [241 P.2d 221], evidence of several commitments to mental institutions, delusions of persecution, hallucinations, opinion that he was possibly psychotic, and irrational behavior during trial held to establish lack of present sanity as a matter of law.)

In view of the evidence before it supporting the reasonable inference that appellant lacked present sanity, the trial court was duty bound to hold a hearing to determine that ultimate fact on its own motion before pronouncing sentence. (*People* v. *Westbrook, supra,* 62 Cal.2d 197, 203; see also *People* v. *Laudermilk, supra,* 67 Cal.2d 272, 286.) It did not do so. Consequently, the judgments must be reversed so that the trial court may conduct the required hearing.

The judgments are reversed.

Wood, P. J., and Lillie, J., concurred.