[Crim. No. 21316. First Dist., Div. One. Apr. 23, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
DARRYL L. GOLDSTEIN, Defendant and Appellant.

COUNSEL

Geoffrey Rotwein, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Gloria F. DeHart and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

### OPINION

**ELKINGTON, Acting P. J.**—On a jury's verdicts defendant Darryl L. Goldstein was found guilty of perpetrating 17 counts of felony against 3 victims, including the crimes of false imprisonment effected by violence (Pen. Code, §§ 236, 237), inducing a minor to use a narcotic drug (Health & Saf. Code, § 11353) and marijuana (Health & Saf. Code, § 11361), administering a narcotic to another to enable himself to commit a felony (Pen. Code, § 222), oral copulation by means of force (Pen. Code, § 288a, subd. (c)), attempted sodomy by means of force (Pen. Code, §§ 664, 286, subd. (c)), and assault with intent to commit sodomy (Pen. Code, §§ 220, 286). He appeals from the judgment which was entered upon the verdicts.

We set forth the several appellate contentions as phrased, and in the order stated, by Goldstein.

### I.

Contention: "The trial court erred by refusing to permit defense counsel to withdraw and to substitute new defense counsel, or in the alternative, the trial court erred by refusing to permit defense counsel to testify on behalf of appellant."

On the afternoon of the trial's commencement, Goldstein's attorney was informed that a material witness, expected to testify for the defense, had recanted his promised testimony and indicated he would testify for the prosecution. The attorney stated to the court that if the witness so testified he, the attorney, would be obliged himself to testify to prior inconsistent statements of the witness, and other impeaching matter. He then moved to "be relieved as counsel of record because I am a prospective witness if he is called as a witness for the prosecution." The trial court denied the motion, and the trial proceeded.

The witness *did* thereafter testify damagingly on behalf of the prosecution. At the conclusion of his testimony, the following discussion took place between the court and counsel: "[Defense Counsel:] . . . Your Honor, I would just like to put on the record that in chambers, not on the record, prior to coming out this afternoon, I asked permission to take the stand as a witness, as a defense witness, and you indicated that you would deny that request. The Court: That's right. That was the extent of the conversation that we had, too. That was the extent of

the conversation; that you said you would like to take the stand as a witness and you asked me if you could and I said no. [Defense Counsel:] I would like to make the request now. The Court: You already made it and I have already denied it and you made the record."

The instant claims of error arise from the above proceedings.

■ We perceive no abuse of discretion in the trial court's *first* ruling, denying defense counsel's motion to "be relieved as counsel of record because I am a prospective witness if he is called as a witness for the prosecution."

The motion was based upon the speculation that the witness *might* be called by the prosecution. Witnesses had been subpoenaed and a panel of jurors were awaiting voir dire. The court stated that already "this case has a history of delays that are caused by the defendant as counsel." (*Sic.*) Granting the motion would necessarily result in an extended continuance, and further delay while another attorney familiarized himself with Goldstein's case. Such a result was at odds with the public policy expressed by Penal Code section 1050. And: "The granting or denial of a motion for a continuance in the midst of a trial traditionally rests within the sound discretion of the trial judge who must consider not only the benefit which the moving party anticipates but also the likelihood that such benefit will result, the burden on other witnesses, jurors and the court and, above all, whether substantial justice will be accomplished or defeated by a granting of the motion. In the lack of a showing of an abuse of discretion or of prejudice to the defendant, a denial of his motion for a continuance cannot result in a reversal of a judgment of conviction." (*People v. Laursen* (1972) 8 Cal.3d 192, 204 [104 Cal.Rptr. 425, 501 P.2d 1145] [cert. den., 412 U.S. 915 (37 L.Ed.2d 142, 93 S.Ct. 2738)].)

■ But we view differently the *second* of the criticized rulings made after the witness had testified, that defense counsel might not give impeaching testimony.

It is first noted that, according to defense counsel's offer, he would testify to prior inconsistent statements of a material witness against Goldstein. It was relevant testimony tending in reason to disprove the disputed fact of his client's guilt. Such evidence is admissible when, as here, it is otherwise not barred by law. (Evid. Code, §§ 210, 351.) The right to produce legally admissible relevant evidence in defense of a

criminal charge is one of the *"basic ingredients of due process of law."* (Italics added; *Washington* v. *Texas* (1967) 388 U.S. 14, 18 [18 L.Ed.2d 1019, 1023, 87 S.Ct. 1920].) It is "fundamental to the fair administration of American justice" and *"due process of law"* that "a criminal charge may be answered" by "the calling and interrogation of *favorable witnesses*, ..." (Italics added; *Faretta* v. *California* (1975) 422 U.S. 806, 818 [45 L.Ed.2d 562, 572, 95 S.Ct. 2525].)

(Parenthetically, we here observe, and emphasize, that we are not concerned on this appeal with an actual, or potential, conflict of interest between an attorney and his client, or between an attorney and a former client who had become an adversary witness. Instead the case involves only an attorney who, without fault or purpose on his part, after a trial's commencement found it to be in his client's interest that he testify on the client's behalf.)

■ It is a judicially noted truism that: "An attorney who attempts to be both advocate and witness impairs his credibility as witness and diminishes his effectiveness as advocate." (*Comden* v. *Superior Court* (1978) 20 Cal.3d 906, 912 [145 Cal.Rptr. 9, 576 P.2d 971, 5 A.L.R.4th 562] [cert. den., 439 U.S. 981 (58 L.Ed.2d 652, 99 S.Ct. 568)].) And there has developed the principle that an attorney who knows, or ought to know, that he should be a material witness at a trial, will ordinarily be obliged to arrange for other counsel to try the case. Lesser reasons are to avoid the *"appearance* of ... impropriety"* (*Comden* v. *Superior Court, supra*, p. 912), and to ""ensure that the [bar's] standards of ethics remain high"" (*Harris* v. *Superior Court* (1979) 97 Cal.App.3d 488, 493 [158 Cal.Rptr. 807]). But its principal purpose, as noted, is to *protect the client* from his attorney's "impaired credibility" and "ineffective advocacy." (*Comden* v. *Superior Court, supra*, p. 912.)

"[T]he rule is not intended to personally benefit [the] other party, or to aid counsel for such other party." (*Comden* v. *Superior Court, supra*, 20 Cal.3d 906, 915, fn. 3.) "Indeed, ... the adversary party will ordinarily be benefited in such circumstances, for [as noted] an 'attorney who attempts to be both advocate and witness impairs his credibility as witness and diminishes his effectiveness as advocate.'" (*Harris* v. *Superior Court, supra*, 97 Cal.App.3d 488, 493.) "Thus, [it] is not a rule proscribing deceptive, dishonest, immoral or even unethical conduct in the true sense; it is, rather, a rule of professional propriety or etiquette resulting from the balancing of a number of competing interests ...." (*People* ex rel. *Younger* v. *Superior Court* (1978) 86 Cal.App.3d 180,

201 [150 Cal.Rptr. 156].) "The ultimate issue 'involves a conflict between a client's right to counsel of his choice and the need to maintain ethical standards of professional responsibility.'" (*Harris* v. *Superior Court, supra*, p. 493.)

 Rule 2-111(A)(4) of the California State Bar Rules of Professional Conduct has codified the rationale as follows: "If upon or after undertaking employment, a member of the State Bar knows or should know that the member ought to be called as a witness on behalf of the member's client in litigation concerning the subject matter of such employment, the member may continue employment only with the written consent of the client given after the client has been fully advised regarding the possible implications of such dual role as to the outcome of the client's cause and has had a reasonable opportunity to seek the advice of independent counsel on the matter." It will be seen that no public interest prevents the attorney from being a material witness, *if it be with the informed and intelligent consent of his client.* Here there can be no doubt that counsel's expressed desire to testify was with such consent of his client, Goldstein.

And finally we note language of the dissent of a closely divided (four-three) court in *Comden* v. *Superior Court, supra*, 20 Cal.3d 906, concerning which the majority expressed no disagreement: "[R]eason suggests that if a party is willing to accept less effective counsel because of the attorney's testifying, neither his opponent nor the trial court should be able to assert this choice against the party without clear evidence of detriment to the opponent or injury to the integrity of the judicial process." (20 Cal.3d, p. 918.) This rationale was in strict accord with the court's majority holding that the value or weight of the attorney's testimony be considered, that "substantial hardship" to the client be avoided, and that the "client's interests" be protected.

By virtue of the foregoing, we find error of constitutional dimension.

 Nevertheless, we inquire whether the error was "harmless beyond a reasonable doubt" according to the criterion of *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 711, 87 S.Ct. 824, 24 A.L.R.3d 1065].

We observe that at the conclusion of the recanting witness' direct testimony he was broadly cross-examined by Goldstein's attorney. During its course, the witness admitted the prior inconsistent statements that

the attorney wished to establish by his own testimony. Furthermore, testimony such as the following was elicited: "Q. Did you ever ask me whether I was going to help you in your case in any way? A. No. . . . Q. And I told you that it was very important that you tell the truth in this case, didn't I? A. Oh, yes. Q. And I was very concerned about the fact that you tell the truth before the jury, wasn't I? A. Yes, because I was, I was going to tell the truth. Q. You told me that; you were lying when you were telling me that? A. No, I didn't tell you I was lying. I told you that I had been to his house and everything. I didn't tell you that I was lying. Q. You told me the entire story that you just told on direct, didn't you? . . . A. Yes. Q. Did you ever imply or indicate or try to hint to me in any way that it was a lie? A. No, I didn't. . . . Q. Did you indicate an interest, a willingness, a desire to testify in Mr. Goldstein's trial? A. Yes, I was willing; yes. Q. Were you interested? A. At the time."

We find the evidence of Goldstein's guilt of the charges concerning which the witness testified to be strong, and that the attorney's testimony would bring his client no benefit beyond that already elicited on the witness' cross-examination. Our conclusion is that the error we have found was harmless, beyond a reasonable doubt.

## II.

█ Contention: "The trial court committed a prejudicial abuse of discretion by refusing to strike evidence of another uncharged incident of sexual attack by appellant, and by failing to instruct the jury sua sponte as to the cautionary instructions under CALJIC 2.50 and 10.36."

A police officer had testified in respect of the charges concerning a complaining witness who was a minor. On cross-examination defense counsel endeavored to develop a theory that the officer had confused that offense with an uncharged offense of which one Arnett was the complainant. On *redirect examination,* over objection, the prosecution was permitted to adduce testimony in respect of the Arnett complaint, thus to establish that the two cases were not confused.

Thereafter, out of the jury's presence, defense counsel moved for a mistrial because of the evidence's allowance. Upon the prosecutor's further explanation of the evidentiary purpose Goldstein responded: "If that was the purpose for the district attorney bringing out the informa-

tion pertaining to Mr. Arnett in view of the fact that Sergeant Long said 'no, I did not confuse the two,' I would ask tomorrow morning that the court instruct the jury to disregard any reference that was brought out by Sergeant Long pertaining to the witness Arnett in view of the fact that he testified that he did not confuse [the minor] and Arnett, and that was the purpose in the district attorney bringing up that information. I would ask for an admonition instruction to disregard any testimony pertaining to Arnett."

Defense counsel thereupon prepared an instruction which was read by the trial court to the jury the following morning, as follows:

"Now, ladies and gentlemen of the jury, during yesterday's proceedings the district attorney in the redirect examination of Sergeant Long, who is just leaving, asked questions of the sergeant pertaining to certain information contained in a police report which he identified as being the second page, the copy of the second page of a report that he had made. And questions concerning what was in that report were directed to the sergeant referable to the name of James Arnett. I want to instruct you at this time that testimony is stricken. In other words, you heard something. Now I am telling you you heard it, forget it, disregard it. It is not evidence in this case. It is not to be considered by you in any way; that information with reference to James Arnett that was discussed relative to the police report in the redirect examination."

We are of the opinion that this "admonitory" instruction effectively granted Goldstein's motion to "strike evidence of another uncharged incident," and that assuming error, arguendo, it was manifestly cured by the trial court's instruction.

The related contention of erroneous failure to give, *sua sponte*, the additional cautionary instructions of CALJIC Nos. 2.50 and 10.36 patently lacks merit, because of the giving of the instruction prepared by defense counsel.

### III.

█ Contention: "There is no offense of 'attempted sodomy' in California."

Sodomy accomplished against the victim's will by means of force is a crime denounced by Penal Code section 286, subdivision (c), which is

punishable by imprisonment in the state prison for three, six or eight years. And Penal Code section 664 provides: "Every person who attempts to commit any crime [such as sodomy by force], . . . is punishable by imprisonment in the state prison for one-half the term of imprisonment prescribed upon a conviction of the offense so attempted; . . ."

No merit is discerned in Goldstein's argument that although a punishment is fixed for attempted sodomy, the crime itself is not defined. "Sodomy" and "attempt" are words of common understanding. (See Webster's New Internat. Dict. (3d ed. 1971) pp. 140, 2165.) "To comply with the constitutional requirement of due process of law, the crime for which defendant is being prosecuted must be clearly defined, but it is only necessary that the words used in the statute be well enough known to enable those persons within its purview to understand and correctly apply them." (*People* v. *Nunn* (1956) 46 Cal.2d 460, 467 [296 P.2d 813] [cert. den., 352 U.S. 883 (1 L.Ed.2d 82, 77 S.Ct. 126)].) And, "in order for a statute to comply with constitutional requirements, '. . . " . . . it is not necessary that it furnish detailed plans and specifications of the acts or conduct prohibited." '" (*People* v. *Blake* (1960) 179 Cal.App.2d 246, 251-252 [3 Cal.Rptr. 749] [disapproved on other grounds, *People* v. *Jackson* (1963) 59 Cal.2d 468, 470 (30 Cal.Rptr. 329, 381 P.2d 1)].)

It is true, as said in *People* v. *Buffum* (1953) 40 Cal.2d 709, 718 [256 P.2d 317], that: "Sections 663 and 664 of the Penal Code prescribe punishment for attempts to commit crimes but do not define the offense." But here those statutes *and Penal Code section 286, subdivision (c),* do define the crime at issue.

Further, we note that convictions for attempt to commit sodomy have repeatedly been upheld. (See *People* v. *Oates* (1904) 142 Cal. 12, 14 [75 P. 337]; *People* v. *Featherstone* (1945) 67 Cal.App.2d 793, 795 [155 P.2d 685]; *People* v. *Jensen* (1926) 76 Cal.App. 558, 559-561 [244 P. 1086]; *People* v. *Erwin* (1906) 4 Cal.App. 394, 396 [88 P. 371].)

IV.

Contention: "The trial court erred by refusing appellant's requested jury instruction pertaining to the defense of reasonable belief that the victim-minors were adults."

The information charged that Goldstein, over the age of 18, in violation of Health and Safety Code section 11361 "did willfully and unlawfully solicit, induce, encourage, and intimidate a minor ... to use marijuana" (counts IV and XII), and in violation of Health and Safety Code section 11353 did so "solicit, induce, encourage, and intimidate ... a minor, with the intent that said minor should knowingly use a narcotic, to wit, cocaine" (counts III, XI and XVI).

It is significant to Goldstein's contention that Health and Safety Code sections 11361 and 11353 relate only to minors. ("Minors are all persons under 18 years of age." Civ. Code, § 25.) It is *not* a criminal offense to so "solicit, induce, encourage, and intimidate" adult persons.

A clearly indicated defense of Goldstein at the trial was that he had entertained a good faith belief that the minors of the charged offenses were 18 years of age or older.

He therefore requested that as to "Counts IV and XII" the court give the instruction: "It is a defense to the charge of furnishing marijuana to a minor that the defendant reasonably believed that the person was 18 years of age or older"; and that as to "Counts III, XI and XVI" it give the instruction: "It is a defense to the charge of furnishing the controlled substance of cocaine to a minor that the defendant reasonably believed that the person was 18 years of age or older."

The requested instructions were rejected by the trial court. That ruling is the subject of the instant contention.

The applicable principle was stated by our high court in *People* v. *Hernandez* (1964) 61 Cal.2d 529, 530 [39 Cal.Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092]. There the defense to a charge of statutory rape was that the accused had held "in good faith a reasonable belief that the prosecutrix was 18 years or more of age." The defense was disallowed by the trial court. Reversing a conviction, the *Hernandez* court expressed unanimous agreement with its author who, quoting earlier authority, had opined: ""At common law an honest and reasonable belief in the existence of circumstances, which, if true, would make the act for which the person is indicted an innocent act, has always been held to be a good defense.... So far as I am aware it has never been suggested that these exceptions do not equally apply to the case of statutory offenses unless they are excluded expressly or by necessary implication."" (*Id.*, pp. 535-536.)

And see *People* v. *Mayberry* (1975) 15 Cal.3d 143, 154-155 [125 Cal.Rptr. 745, 542 P.2d 1337], *Matter of Application of Ahart* (1916) 172 Cal. 762, 764-765 [159 P. 160].

Moreover, it appearing that Goldstein's defense to the instant charges was a good faith belief that the complaining witnesses were 18 years of age or older, the trial court was under a duty, *sua sponte*, to give correctly phrased instructions on that theory. As stated in *People* v. *Stewart* (1976) 16 Cal.3d 133, 140 [127 Cal.Rptr. 117, 544 P.2d 1317], the court was under an "'obligation to instruct on defenses, . . . and on the relationship of these defenses to the elements of the charged offense. . .' where '. . . it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense . . . .'" (And see *People* v. *Flannel* (1979) 25 Cal.3d 668, 680-681 [160 Cal.Rptr. 84, 603 P.2d 1]; *People* v. *St. Martin* (1970) 1 Cal.3d 524, 531 [83 Cal.Rptr. 166, 463 P.2d 390].)*

The rules of *Hernandez* and *Stewart* patently apply to the statutory offenses here at issue. It follows that the trial court erred in not instructing in a manner substantially as requested by Goldstein.

We are unable to express a view that the error was harmless.

## V.

■ Contention: "The court erred in its instruction pertaining to unlawfully administering a narcotic with the intent to commit the felony of forcible oral copulation, pursuant to Penal Code, section 222."

It is first argued that the jury should have been instructed that the subject narcotic must have been administered "'wilfully and unlawfully.'" Here under the evidence, such administration, if done at all, was done wilfully and unlawfully. Instructions need not be given when reasonably not required by the evidence. "Jury instructions must be responsive to the issues, which in a criminal case, are determined by the evidence. . . ." (*People* v. *Preston* (1973) 9 Cal.3d 308, 319 [107 Cal.Rptr. 300, 508 P.2d 300].) "The court is never required to give any instructions that would have no foundation in the evidence or in any

---

*It will be noted, contrary to the critical language of Health and Safety Code sections 11353 and 11361, that the requested instructions refer to offenses of "furnishing" marijuana and cocaine. The disparity is found to be of no significance for, as noted, the trial court was bound to correctly instruct, *sua sponte*, on the defenses raised by Goldstein.

theory on which the case was tried." (*People* v. *Brunt* (1972) 24 Cal. App.3d 945, 955-956 [101 Cal.Rptr. 457].)

The second of the instant contentions, unsupported by authority, is that the following instruction was erroneous: "The defendant is charged with violation of section 222 of the Penal Code in counts 5, 10 and 15 with administering an intoxicating agent to another with the intent to aid himself, the defendant, to commit a felony, forcible oral copulation. Every person who administers to another any narcotic or intoxicating agent, alcohol, with the specific intent to enable himself to commit a felony, is guilty of a crime in violation of section 222 of the Penal Code. The counts involved were 5, 10 and 15." We find no fault with it.

## VI.

 Contention: "The court committed a prejudicial abuse of discretion by failing to grant appellant's petition as a mentally disturbed sex offender under Welfare and Institutions Code, sections 6300 et seq."

Whether mentally disordered sex offender proceedings should be commenced following one's conviction of a sex offense is, as conceded by Goldstein, confided to the sound discretion of the trial court. Welfare and Institutions Code section 6302, subdivision (a), provides that upon such a conviction the court "*may*" adjourn the criminal proceedings and "*may*" thereafter certify the person for hearing and examination whether he "is a mentally disordered sex offender...."

It is held that the trial court may in its discretion reject such mentally disordered sex offender proceedings where there is no medical or psychiatric evidence of sexual psychopathy (*People* v. *Westbrook* (1964) 62 Cal.2d 197, 205-206 [41 Cal.Rptr. 809, 397 P.2d 545]; *People* v. *Barnett* (1946) 27 Cal.2d 649, 657 [166 P.2d 4]), or there appears to be no realistic chance of successful treatment as a mentally disordered sex offender (*People* v. *Vallez* (1978) 80 Cal.App.3d 46, 57 [143 Cal.Rptr. 914]), or there is only the accused's expressed belief that he is such an offender (*People* v. *Smith* (1950) 100 Cal.App.2d 162, 165-166 [223 P.2d 82]), or where the court reasonably concludes that appropriate treatment would be available within the more secure state prison system (*People* v. *Preciado* (1981) 116 Cal.App.3d 409, 412 [172 Cal.Rptr. 107]). And the use of the word "*may*" in the statute has been declared significant and meaningful in determining the legislative intent. (*People* v. *Haley* (1941) 46 Cal.App.2d 618, 623-624 [116 P.2d 498].)

Under these rules, and on the record before us, we are unable to discern the claimed "prejudicial abuse of discretion."

## VII.

Contention: "Appellant should be given his good time/work time credits."

Goldstein will be allowed any presentence conduct credits to which he may be entitled, according to *People* v. *Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874], and *People* v. *McMillan* (1980) 110 Cal.App.3d 682 [167 Cal.Rptr. 924], by the Department of Corrections.

## VIII.

Contention: Following the briefing of this appeal, Goldstein sought and was granted permission to file a supplemental brief based upon what he calls *Madden* (*People* v. *Madden* (1981) 116 Cal.App.3d 212 [171 Cal.Rptr. 897], *passim*) error.

He argues that while the information charged single criminal acts, the evidence was supportive of findings that several such described acts were committed. He urges that, as in *Madden*, the jury may not have been unanimous as to the commission of any single act. *Madden* holds that under such circumstances the jury should have been instructed that they must unanimously agree on the defendant's guilt as to at least one such act.

We are first advised: "For example, as to [a minor complaining witness], there was testimony that Appellant photographed one act of oral copulation, and that thereafter other act(s) of oral copulation occurred. See R.T. 57-59, as pertaining to Count VI [*sic*]. As to the charge of attempted sodomy under Count VIII, there was testimony that numerous attempts during a two day period occurred. See R.T. 59:6-12, 61:14-17, 62:6-8, and 63-65." Our examination of the adverted to portions of the reporter's transcript reasonably indicates two such acts of oral copulation, as was charged in *count VII.* But the record references as to count VIII may, in our opinion, only be read as evidence that one act of attempted sodomy was committed.

Goldstein then states: "As to Jerry [another minor complaining witness], and the charge of assault with intent to commit sodomy under

Count XVIII, there was testimony that more than one assault occurred. See R.T. 265-270, specifically 266:27-267:9 and 268:11-270:21." Our close examination of the record references, although suggestive of other deviate sexual activity, reasonably indicates the commission of but one assault with intent to commit sodomy, as charged in count XVIII.

Goldstein makes no "appropriate reference to the record," as required by rule 15(a), California Rules of Court, in support of other such contentions, and we ourselves have found no record support for them.

From the foregoing, it appears that Goldstein's conviction of forcible oral copulation (Pen. Code, § 288a, subd. (c)), as charged in count VII is tainted with *Madden* error. Since the instruction required by *Madden* was "necessary for the jury's understanding of the case" (116 Cal.App. 3d, p. 215), failure to so "instruct *sua sponte* on the necessity of agreement of the jurors was error" (*id.*, p. 219) and such error requires reversal with respect to the charge of count VII.

(On the People's petition for rehearing the Attorney General asks that we take note of *People* v. *McIntyre* (1981) 115 Cal.App.3d 899, 907-911 [176 Cal.Rptr. 3], in respect of our instant holding. *McIntyre* differs from *Madden*, and concludes (p. 910) that a "rape and an oral copulation occurring . . . as a part of a single event" followed by "a second forced oral copulation . . . within a few minutes . . . does not necessarily make this another separate crime any more than it would be true there are separate crimes of battery if the actor throws a right-hand punch to his victim and immediately follows it with a left-hand punch." For such reasons, *McIntyre* holds that an instruction such as that here at issue was unnecessary.

We find ourselves in respectful disagreement with the holding and rationale of *McIntyre*. Our high court in *People* v. *Perez* (1979) 23 Cal.3d 545, 550-554 [153 Cal.Rptr. 40, 591 P.2d 63, 3 A.L.R.4th 339], has reiterated that offenses such as those at issue here and in *McIntyre*, are not only separate, but separately punishable, crimes. On the other hand, the analogized *battery* of *McIntyre* is "any willful and unlawful use of force or violence upon the person of another." (Pen. Code, § 242.) Such a use of "force or violence," we opine as does *McIntyre*, will reasonably embrace *all* of the continuous punches, pokes, jabs, kicks, etc., that often attend such an unlawful physical encounter as described by *McIntyre*.

And, we think, applying the rule of *McIntyre* would sometimes unacceptably allow conviction of crime where the jury had not agreed that any single criminal act had been committed. We think the rule of *Madden* is the better one; we therefore apply it here.)

## IX.

Contention: "The trial court erred by failing to state reasons for denying appellant's petition as a mentally disturbed sex offender under Welfare and Institutions Code, sections 6300 et seq."

This contention is raised in Goldstein's supplemental petition for rehearing. It is founded upon the state high court's recent opinion reported as *People* v. *Lock* (1981) 30 Cal.3d 454 [179 Cal.Rptr. 56, 637 P.2d 292], holding that in a case such as that before us, where the accused's petition for commitment as a mentally disordered sex offender is denied, the trial court must state *its reasons* for such denial. Here the court did not state such reasons.

It follows that the instant contention has merit.

## X.

By a letter of Goldstein's appellate attorney following his supplemental petition for rehearing, yet another contention was made. It is that in many respects Goldstein was "punished for the same acts in violation of Penal Code, Section 654."

Penal Code section 654 proscribes multiple punishments for multiple offenses constituting parts of a single criminal objective. "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal* v. *State of California* (1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607; 357 P.2d 839] [cert. den., 365 U.S. 823 (5 L.Ed.2d 700, 81 S.Ct. 708)]; *People* v. *Malamut* (1971) 16 Cal.App.3d 237, 243 [93 Cal.Rptr. 782].)

The evidence reasonably establishes that the victims of Goldstein's three separate series of crimes were young boys under the age of 18. He had forcibly detained each of them in his apartment, furnished, and encouraged them to use, narcotics, marijuana and alcoholic beverages in

order to lessen their resistance to his criminal objective, and then by force committed the charged sexual acts. It follows, under the above cited authority, that all of the offenses leading to the felonious sexual acts were not punishable, because they were incident to the criminal objectives. However, the sentences as to each of the six charged sexual offenses were separately punishable, as separate offenses against the same victim (see *People v. Perez* (1979) 23 Cal.3d 545, 552-553 [153 Cal.Rptr. 40, 591 P.2d 63, 3 A.L.R.4th 339]; *People v. Clem* (1980) 104 Cal.App.3d 337, 346 [163 Cal.Rptr. 553]; *People v. Hurd* (1970) 5 Cal.App.3d 865, 872-873 [85 Cal.Rptr. 718]; *People v. Armstrong* (1968) 268 Cal.App.2d 324, 326-327 [74 Cal.Rptr. 37]), and as offenses against different victims (see *In re Dennis C.* (1980) 104 Cal.App.3d 16, 22 [163 Cal.Rptr. 496]; *People v. Johnson* (1974) 38 Cal.App.3d 1, 9 [112 Cal.Rptr. 834]; *People v. Colbert* (1970) 6 Cal. App.3d 79, 84 [85 Cal.Rptr. 617]; *People v. Spence* (1970) 3 Cal.App. 3d 599, 604 [83 Cal.Rptr. 711]; *People v. Pierce* (1968) 260 Cal.App. 2d 852, 860 [67 Cal.Rptr. 438] [cert. den., 393 U.S. 917 (21 L.Ed.2d 203, 89 S.Ct. 245)]]).

It follows that Goldstein should not have been sentenced as to counts II, III, IV, V, IX, X, XI, XII, XIV, XV, and XVI, charging the crimes of false imprisonment effected by violence (Pen. Code, §§ 236, 237), inducing a minor to use a narcotic drug (Health & Saf. Code, § 11353) and marijuana (Health & Saf. Code, § 11361), and administering a narcotic to another to enable himself to commit a felony (Pen. Code, § 222).

The judgment is reversed. The cause is remanded to the superior court for sentencing proceedings on the present record as to counts VI, VIII, XIII, XVII, and XVIII, and for retrial or other appropriate proceedings as to counts II, III, IV, V, VII, IX, X, XI, XII, XIV, XV, and XVI. All such proceedings will be conducted in a manner not inconsistent with the views we have herein expressed. The superior court will allow Goldstein any presentence conduct credits to which he may be entitled, according to *People v. Sage, supra*, 26 Cal.3d 498, and *People v. McMillan, supra*, 110 Cal.App.3d 682.

Grodin, J.,* and Ragan, J.,* concurred.

Petitions for a rehearing were denied May 20, 1982, and the opinion was modified to read as printed above. The petitions of both parties for a hearing by the Supreme Court was denied July 22, 1982.

---

*Assigned by the Chairperson of the Judicial Council.